UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                                          3:05-CR-270 (TJM/DEP)

        vs.

DAVID J. FALSO,

                    Defendant.

_____

STATE OF NEW YORK  )
COUNTY OF BROOME  ) ss.:

     **THOMAS SAITTA, ESQ.**, being duly sworn, deposes and says:

     1.     I am the attorney of record for the Defendant, David J. Falso, and I make this affidavit in support of Mr. Falso's pretrial motions submitted to this Court.  The following facts are stated upon information and belief, based on my review of the relevant documents thus far provided by the Government, as well as my independent investigation and review of this case, including my interviews with Mr. Falso.

     2.     Mr. Falso was charged by Indictment dated June 16, 2005, with the following crimes;

          a.  Travel with Intent to Engage in Illicit Sexual Conduct with Minors, 18 U.S.C. §2423 (b) &(f); Count 1.

          b.  Travel with Intent to Engage in Illicit Sexual Conduct with Minors, 18 U.S.C. §2423 (b) &(f); Count 2.

          c.    Production of Child Pornography, 18 U.S.C. §2251(a); Counts 3-10.

          d.    Receiving Child Pornography Via the Internet, 18 U.S.C. §§2252A (a)(2)(A)&(B), 2256; Counts 11-233.

  e. Transporting and Shipping Child Pornography; 18 U.S.C. §2252A (a)(1); Counts 234-241.

  f. Possession of Child Pornography; 18 U.S.C. §2252A (a)(5)(B); Count 242.

  3. The Government has provided pre-trial discovery including the application for the search warrant granted by the Court on June 1, 2005.

  4. Additionally, the government has provided the defense with the opportunity to examine various items seized at the time of the execution of the warrant, including the photographs referenced in Counts 3-10, and copies of images referenced in Counts 11-233, as well as other documents.

### Suppression Of Evidence Seized From Mr. Falso's Home

  5. On June 1, 2005, the Government made an application for a search warrant authorizing the search of 20 Peaceful Drive, Cortland, New York, the home of David J. Falso ("Mr. Falso").  A copy of the search warrant application and affidavit of James T. Lyons, Jr. ("Lyons") is attached as Exhibit A.

  6. Specifically, the search warrant application sought permission to, among other things, search the house for computers and other devices that might be used to store child pornography obtained from  the internet and to otherwise search the house for child pornography.  The Government alleged that there was probable cause to believe that Mr. Falso's home contained evidence of a violation of 18 U.S.C. §§  2252 and 2252(A) (possession, receipt and transmission of child pornography).

  7. In support of the application, Lyons submitted an affidavit that was 26 pages in length.  However, less than 5 pages of the affidavit contained facts specifically pertaining to Mr. Falso and his home.  The remainder of the affidavit set forth generic facts regarding

the crime of child pornography.

8.      For example, the generic portion of the affidavit contained a section entitled "Applicable Law" which sets forth the language of 18 U.S.C. § 2255(A).  The affidavit also contained a "Definitions" section that explains such terms as "IP Address" (the unique number used by a computer to access the internet) and "URL" or "Uniform Resource Locator" (the unique address for each file on the internet).  The affidavit also described the need to seize a computer claimed to contain child pornography to permit a computer expert to later analyze the computer in a laboratory, due to the volume of information on the computer.  (Pages 8-12 of exhibit A).  The affidavit also described the method used by the expert to search computer hardware and software.

9.      The affidavit further stated that computers are used by individuals to locate, collect and download child pornography.  (Pages 13; 23 of exhibit A).  Child pornographers also use online resources "to retrieve and store child pornography."  Payment is typically made by a credit card.  Id.

10.      Lyons described Yahoo! Inc. as a computer service company that provides services to "users" of the internet.  (Para. 27 of exhibit A).  Such services include email, groups, internet search capability, personal ads, chat, and instant messaging.  When describing a Yahoo! customer, Lyons did not refer to such customer as a "subscriber" but rather as a "user."  (See, Para. 27of exhibit A).

11.      In that part of the affidavit specifically pertaining to Mr. Falso (Pages 16-20 of exhibit A), Lyons stated that FBI Agent Gentry had "obtained the IP address of a website which advertised and contained child pornography."  (Para. 28 of exhibit A).  When Gentry viewed the website, a web page stated that it belonged to "CP Freedom Group."  The network administrator was "CyberGate" and "www.valveweb.net" hosted the website.

3

According to Lyons, the web page for the website "contained approximately eleven images of child pornography" and "advertised additional child pornography, but the URL was hidden until a membership was purchased." Id.  Lyons did not provide any other information regarding the web page.  Importantly, Lyons did not set forth any facts from which it could be determined that the overriding, if not the sole purpose, of the website was the trading of child pornography.  For example, Lyons did not provide any information regarding any text on th web page from which the overriding or sole purpose of the website could be determined.

12.     According to Lyons, FBI Agent Daniels, acting undercover, signed up for a one-month membership and was charged a $99.00 membership fee.  Lyons did not disclose the method of payment, but presumably it was done by credit card.  (Lyons stated that the charge was processed through Wells Fargo Bank.)

13.     Lyons stated that Agent Daniels received an e-mail from CP Freedom Group containing the URL www.cp-members.com, with login and password numbers.  The e-mail stated that membership was good for one month.  Significantly, the affidavit did not state that Agent Daniels then viewed child pornography, that he was sent e-mails containing child pornography as attachments, that he was notified by the website when new child pornography was available for viewing, or that he had downloaded or was able to download child pornography from the website.

14.     Lyons stated that a "forensic examination" of the website "revealed several hundred *possible* subscribers along with email addresses and other information." (*emphasis added)* (See para. 31 of exhibit A).

15.     In July 2004, the Government then allegedly served subpoenas "on appropriate ISP's for each email address identified on the cpfreedom.com. website." Id.

4

16.     In September 2004, the Government received the subpoenaed records.

17.     Importantly, Lyons stated in his affidavit as follows:

> Pursuant to a review of the subpoenaed records, the following subscriber information (among others) was associated with the cpfreedom.com website: David J. Falso, 20 Peaceful Drive, Cortland, New York, Yahoo User ID: cousy1731 @yahoo.com.  (Para. 31 of exhibit A).

18.     Lyons stated that "based upon [the] investigation and examination" of the website, it appeared that someone with the foregoing email address "either gained access or attempted to gain access" to the website cpfreedom.com.

19.     Lyons also stated that he had obtained a police report which stated that Mr. Falso had been arrested and charged with Sexual Abuse and Endangering the Welfare of a Child.  According to the report, Mr. Falso had placed his hands inside the underwear of a young female.  (Para. 32 of exhibit A).  According to the report, Mr. Falso, he had, in an interview,  admitted that he tickled the female and may have gone too far.  According to Lyons, Mr. Falso pled guilty to Acting in a Manner Injurious to a Child Less Than 16 Years of Age, a New York State Class A misdemeanor and received three years probation.

20.     As set forth more particularly below, the affidavit fails to establish probable cause for the warrant in that it does not demonstrate that Mr. Falso was (a) a member and/or a subscriber of cpfreedom.com and (b) that the "overriding, if not sole, purpose" of the website was the trading of pornography.

21.     In fact, it contains misleading statements regarding Mr. Falso's purported membership in the site, his having accessed or attempted to access the site and the nature of the site.  With the redaction of such statements the remainder of the  warrant application is insufficient to establish probable cause.  Such misleading statements require

5

a "Franks" hearing to determine the validity of the warrant.

22.     Additionally, the recitation in the warrant application of the fact that Mr. Falso had a prior conviction for Endangering the Welfare of a Child does not supply probable cause to believe that there was a fair probability that Mr. Falso's home or computer contained evidence of child pornography.

### a. Misleading Statements In Lyon's Affidavit

23.     In the application, Lyons represents that the subpoenaed records of the ISP for Mr. Falso's e-mail account with Yahoo.com contained evidence of his having been a subscriber to and/or member of the www.cpfreedom.com website.  (Para. 31 of exhibit A).

24.     In particular, he states that the subpoenaed records referenced the plaintiff's name, address and Yahoo e-mail ID; cousy1731@yahoo.com, which he characterizes as "subscriber information" associated with the aforementioned website.  In doing so he invites the Court to infer that such ISP records show that Mr. Falso was a subscriber to the website. Id.

25.     This statement is misleading.  As indicated in the affidavit of Robert DeCicco, attached hereto as exhibit B, an ISP would not keep, and therefore could not provide records indicating that one of its customers was a member and/or subscriber to a given website.

26.     In addition, the warrant also represents that Mr. Falso was a subscriber to the cpfreedom website because pursuant to the investigation and forensic examination, of the site, it appeared that someone using Mr. Falso's e-mail address "contacted or attempted to contact" the site.  This conclusion was based on the fact that Mr. Falso's e-mail address was found on the cpfreedom.com website. Id.

27.     This assumption is misleading in two respects;

a.  the first is that visiting a site is not the same as being a member and/or subscriber.  As indicated by the experience of Special Agent Daniels, he needed to pay a monthly membership fee before he could become a member of the site.  (Para. 28 & 29 of the Exhibit A).  The warrant application contains no allegations of finding financial records of the plaintiff paying a membership fee to the site.

b.  the second is that the fact that Mr. Falso's e-mail address appeared on the website does not demonstrate that he initiated or attempted to initiate contact with the site. In particular, the Government failed to disclose that Mr. Falso's e-mail address could have appeared on the website for other reasons.

28.    As set forth in the DeCicco affidavit, the operators of the website could have obtained Mr. Falso's e-mail address from other sources, including e-mail lists of individuals interested in adult pornography, a non-criminal activity.  Therefore, it is equally likely that the website contacted or attempted to contact Mr. Falso.

29.    Based on the foregoing, Mr. Falso contends that he is entitled to a Franks Hearing to determine whether statements contained in the warrant application were false or misleading, and if so, whether there existed probable cause for the issuance of the search warrant upon the redaction of the offending statements.

### b. No Proof That Site Was Dedicated to Trading Child Pornography

30.    The search warrant application failed to allege sufficient facts to allow the Court to conclude that the overriding, if not sole purpose of the website was the trading of child pornography.  At most, the affidavit established that child pornography could be viewed on the website.  There is no evidence that child pornography could be downloaded.

7

31.     In particular, the affidavit does not indicate that the website

a. contained a welcome message which informs visitors that the site provides an opportunity to trade child pornography.  The Lyons' affidavit merely stated that the web page displayed some images of child pornography and advertised that additional child pornography was available upon purchase of a membership.  It is impossible to conclude, based on such limited information, that the "overriding, if not sole, purpose of the website was the trading of child pornography.  For example, the website could have contained both adult and child pornography.  In such instance, it would be impossible to conclude that a person who became a member did so because they sought to download child pornography rather than adult pornography (which is legal).  The website could have also had other purposes such as the exchanging of opinions on child pornography. Therefore, membership in the website cannot imply illegal use.

b. had a revealing website name.  There is nothing in the name www.cpfreedom.com to communicate that the purpose of the website was the trading of child pornography.  Rather, it is an innocuous name.

c. provides no information regarding technical features of the site. The Lyons' affidavit provides   no information regarding the technical features of the www.cpfreedom.com website such as whether it contains a Files section that permitted downloading, a Polling section, a Links section, and a Chat section.

d. permitted downloading of child pornography.  The Lyons' affidavit failed to establish that the website permitted downloading of child pornography and that the predominant purpose of the website was to download child pornography for its members. Without evidence that downloading was possible and that it had occurred, there can absolutely be no probable cause to believe that Mr. Falso had downloaded child

pornography from the website and that such pornography was on his home computer.

Moreover, the affidavit contains no evidence that the Government agent who joined the www.cpfreedom.com website in an undercover capacity downloaded child pornography or received child pornography by attachments to e-mails. Nor was there evidence that other members were downloading child pornography or exchanging e-mails with illicit attachments. At most, the affidavit permits the conclusion that child pornography could be viewed, once an individual joined the website as a member, but it does not permit the conclusion that the website allowed downloading of child pornography.

32.     Therefore, the affidavit supporting the application for the search warrant herein was insufficient to establish probable cause.

### Suppression Of Mr. Falso's Statement

33.     Upon execution of the search warrant at Mr. Falso's home, Government agents questioned Mr. Falso regarding his alleged commission of the crime of child pornography.

34.     Agent Lyons summarized alleged admissions made by Mr. Falso in a four (4) page report attached hereto as Exhibit C.

35.     Mr. Falso contends that the alleged admissions are inadmissible on three grounds: (a) the statements must be excluded as "the fruit of the poisonous tree" in that they were obtained as a direct consequence of the illegal search; (b) the statements must be suppressed, in whole or in part, as a consequence of the failure to give Mr. Falso his *Miranda* warnings. As set forth in the affidavit of Mr. Falso attached hereto as exhibit D, such statements were taken during the course of custodial interrogation, and therefore the statements were not voluntarily made and were otherwise obtained in violation of Mr. Falso's Fifth Amendment rights.

## Dismissal of Counts 3 Through 10 Of The Indictment

36.     Counts 3 through 10 of the Indictment carry with them the most severe potential penalties against Mr. Falso.  (A copy of the Indictment is attached as Exhibit E.) They involve eight photographs allegedly taken by Mr. Falso while he was alleged to have been on vacation in one or more foreign countries.   The photographs purportedly are images of minors engaged in sexually explicit conduct.

### a.  Inapplicability to Foreign Conduct

37.     In Such Counts, the Government alleges that such photographs constitute violations of 18 U.S.C. § 2251(a).   As more fully discussed in the accompanying memorandum of law, Section 2251(a) does not apply to the taking of such photographs in foreign countries and therefore said counts should be dismissed as a matter of law.

### b.  Statute of Limitations

38.     I have reviewed the photographs which are the subject of Counts 3-10 of the indictment herein.  None of the subject photos is dated or contains any indicia of the date on which the pictures were taken.

39.     Nor do the statements purportedly made by Mr. Falso establish the date of such photographs were taken.

40.     As there is no basis to established whether such photographs were produced during the applicable limitations period, therefore Counts 3 through 10 must be dismissed.

### Dismissal of Counts 11 Through 233 of the Indictment

41.     I have reviewed the hard copies of the visual images allegedly received by Mr. Falso via the internet which form the basis of Counts 11 though 233.

42.     While the images contain a notation of the date they were printed, there is no indication as to when these images were first received on the computer from which

they were printed, or when they were allegedly received by Mr. Falso.

43.    Nor does a review of the discovery provided by the government, including the statements purportedly made by Mr. Falso, and the computer forensic analysis report establish when such images were first allegedly received by Mr. Falso.

_____44.    Accordingly, there is no basis to determine whether such images were allegedly received during the applicable limitations period or prior to 2003, when 18 U.S.C. § 2256(8), the statute defining child pornography was declare unconstitutional, and therefore as set forth in the memorandum of law submitted herewith, such counts must be dismissed.

**Mr. Falso's Prior Conviction May Not Be Used To Enhance His Sentence**

45.    Count 3 through 10 of the Indictment also seek to enhance the potential sentence that Mr. Falso may receive, if convicted, on the basis of an allegation that he has "a prior final conviction under the laws of a state for offenses relating to the sexual exploitation of children. . . ."  Under Section 2251 of Title of United States Code, such prior final conviction, if applicable, would result in a statutory mandatory minimum sentence of 25 years.

46.    Similarly, Counts 11 through 233 of the Indictment also seek to enhance Mr. Falso's potential sentence under said Counts based on an alleged "prior final conviction under the laws of a state for offenses relating to sexual abuse or abusive sexual conduct involving a minor. . . ."  Under Section 2252A of Title 18 of the United States Code, such prior final conviction would result in a statutory minimum sentence of ten years.

47.    The Government's claim that such enhanced sentence should be applied is based on the fact that in 1987 Mr. Falso pled guilty to a charge of "Endangering the Welfare of a Child" under New York Penal Law Section 260.10(1).  (Attached as Exhibit

"F" to this Memorandum is a Certificate of Disposition provided by the United States Attorney's Office relating to said charge with a criminal complaint executed by a New York State Investigator and an complaint signed by a New York State Police Investigator and an affidavit of the complaining witness).

48.     According to the Disposition, Mr. Falso pled guilty to the charge of Endangering the Welfare of a Child in 1987 in the Homer Town Court.  The Homer Town Court is not a court of record and a transcript of the plea proceeding does therefore not exist.  A criminal complaint and affidavit allege that in January or February or 1986, Mr. Falso touched the vagina of a female less than 17 years of age.

49.     As more fully discussed in the accompanying memorandum of law, said conviction for Endangering the Welfare of a Child under New York Penal Law Section 260.10(1) may not be used to enhance Mr. Falso's sentence on several grounds.

50.     With regard to Mr. Falso's prior conviction, the Homer Town Court is not a court of record and therefore there is no transcript of Mr. Falso's plea allocution.

51.     By definition, the New York State crime entitled "Endangering the Welfare of a Child" covers a broad range of conduct and is not exclusively limited to conduct relating to sexual contact or sexual exploitation of a child.  The fact that Mr. Falso pled guilty to Endangering the Welfare of a Child under New York Penal Law Section 260.10(1) does not, in and of itself, provide the necessary predicate for the imposition of a statutory mandatory minimum sentence.

52.     Moreover, in entering a plea of guilty, Mr. Falso need not have admitted that he had engaged in the conduct of which he was accused.  For example, Mr. Falso could have denied that he had sexual contact with the minor but admitted that he had nonetheless engaged in conduct that endangered the welfare of the child.

12

53.     In addition, even if the Government could rely on the alleged underlying conduct for the state conviction, it does not support an enhanced sentence under Section 2251(e).

54.     Mr. Falso contends that a conviction under State law for a crime "relating to the sexual exploitation of children" must be substantially identical to the crimes enumerated in Chapter 110.  A review of the crimes enumerated in Chapter 110 reveals that they are different from the underlying conduct described in the criminal complaint for the charge of Endangering the Welfare of a Child to which Mr. Falso pled guilty.

55.     Furthermore, New York law has specifically identified crimes relating to Sexual Exploitation of Children, Sexual Abuse and Sexual Abuse of a Minor and Mr. Falso did not plead guilty to those crimes.

### Mr. Falso May Not Be Found Guilty Of Incidental Conduct Relating To The Taking Of Photographs

56.     Counts 3 through 10 of the Indictment allege a violation of 18 U.S.C. § 2251(a) based on the claim that Mr. Falso took photographs of a minor engaged in sexually explicit conduct "for the purpose of producing a visual depiction of such conduct. . . ."

57.     The Government claims that Mr. Falso took vacations to foreign countries, during which he engaged in sex with minors.

58.     Even if such allegations were true, the taking of photographs during the course of such alleged sexual conduct would have been incidental to the sexual activity, and not a dominant purpose of the activity.  Therefore, a charge under Section 2251(a) based on such alleged facts cannot be sustained.

"s/Thomas A. Saitta
THOMAS SAITTA

13

Federal Bar Roll # 120510

Sworn to before me this
<u>3rd</u> day of January, 2006.


<u>Thomas R. Cline, Esq.</u>
Notary Public