UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

────────────────────────────────

UNITED STATES OF AMERICA,

           vs.

3:05-CR-270 (TJM/DEP)

DAVID J. FALSO,

                Defendant.

────────────────────────────────


**MEMORANDUM OF LAW FOR DEFENDANT,
DAVID J. FALSO**


Respectfully submitted by:


THOMAS A. SAITTA, ESQ.
Attorney for Defendant, David Falso
46 Front Street
Binghamton, New York 13905
(607) 722-3495

# TABLE OF CONTENTS

A.  MOTION TO DISMISS INDICTMENT OR INDIVIDUAL COUNTS

    1.  COUNTS 3 THROUGH 10 OF THE INDICTMENT
MUST BE DISMISSED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

    2.  COUNTS 11 THROUGH 233 OF THE INDICTMENT
MUST BE DISMISSED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

    3.  COUNTS 234 THROUGH 241 OF THE INDICTMENT
MUST BE DISMISSED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

    4.  COUNT 242 OF THE INDICTMENT MUST BE DISMISSED. . . . .   9

B.  PHYSICAL EVIDENCE AND STATEMENTS OF THE DEFENDANT
WERE OBTAINED IN VIOLATION OF THE DEFENDANT'S CONSTITUTIONAL
RIGHTS AND MUST BE SUPPRESSED. . . . . . . . . . . . . . . . . . . . . . . . . . .   9

    1.  THE SUPPORTING AFFIDAVIT FALSELY STATED
THAT MR. FALSO WAS ASSOCIATED AS A SUBSCRIBER TO THE
PORNOGRAPHIC WEBSITE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

        a.  The Affidavit is Misleading. . . . . . . . . . . . . . . . . . . . . . . .   9

        b.  Mr. Falso Is Entitled To A *Franks* Hearing Based On
Such False Or Misleading Statements. . . . . . . . . . . . . . . . . . .   10

    2.  THE SEARCH WARRANT APPLICATION LACKED
PROBABLE CAUSE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

        a.  The need for Probable Cause. . . . . . . . . . . . . . . . . . . . . . . .   11

        b.  Membership In A Wholly Illegal Organization. . . . . . . . . . .   13

        c.  Child Pornographic Websites: The "Candyman" Cases. . . .   15

        d.  Lyons' Affidavit Did Not Meet The Minimum Criteria
Set Forth In *Martin* For Establishing Probable Cause. . . . . . .   19

    3.  STATEMENTS ATTRIBUTED TO MR. FALSO MUST
BE SUPPRESSED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

i

a.  The Statement Was The "Fruit Of The Poisonous Tree". . . . 21

b.  Mr. Falso Was Not Given His *Miranda* Warnings. . . . . . . . .   22

C.  MR. FALSO'S PRIOR CONVICTION MAY NOT BE USED TO
ENHANCE HIS SENTENCE AND SHOULD BE STRICKEN FROM
THE INDICTMENT AS SURPLUSAGE. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

1.  UNDER THE SUPREME COURT'S RECENT DECISION
IN *SHEPARD*, MR. FALSO'S CONVICTION FOR "ENDANGERING
THE WELFARE OF A CHILD' MAY NOT BE USED AS A "PRIOR
CONVICTION" TO ENHANCE HIS SENTENCE. . . . . . . . . . . . . . . . ..   24

2.  THE ALLEGED UNDERLYING CONDUCT FOR THE STATE
CONVICTION DOES NOT SUPPORT AN ENHANCED
SENTENCE UNDER SECTION 2251(e). . . . . . . . . . . . . . . . . . . . . . .   28

3.  NEW YORK LAW HAS SPECIFICALLY IDENTIFIED CRIMES
RELATING TO SEXUAL EXPLOITATION OF CHILDREN, SEXUAL
ABUSE AND SEXUAL ABUSE OF A MINOR, AND MR FALSO
DID NOT PLEAD GUILTY TO THOSE CRIMES. . . . . . . . . . . . . . . . .   29

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   30

TABLE OF AUTHORITIES
Cases

Page

*Apprendi v. New Jersey, 530 U.S. 466 (2000)*...............................   25,26

*Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002)................   5,6,7,8

*Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or,* 518
      U.S. 687(1995)...................................................................   3

*Bell v. Reno*, 218 F.3d 86 (2d Cir. 2000).........................................   3

*Berkemer v. McCarthy*, 468 U.S. 420 (1984)..................................   22

*Blumenthaul v. United States Department of Interior*, 228 F.3d
      82 (2d Cir. 2000)...................................................................   3

*Brinegar v. United States,* 338 U.S. 160 (1949)............................   12

*Brown v. Illinois*, 422 U.S. 590 (1975)...........................................   22

*California Public Employees Retirement System v. World Com.,*
      *Inc.*, 368 F.3d 86 (2d Cir. 2004)............................................   3

*California v. Beheler*, 463 U.S. 1121 (1983)...................................   22

*E.E.O.C. v. Arabian American Oil Co.,* 499 U.S. 244 (1991)..........   1

*Filler v. Hanvit Bank*, 378 F.3d 23 (2d Cir. 2004)...........................   3

*Franks v. Delaware,* 438 U.S. 154 (1978)......................................   10,13

*Giorbenello v. United States,* 357 U.S. 480 (1958)........................   12

*Illinois v. Gates*, 462 U.S. 213 (1983)............................................   12,13,14

*Illinois v. Perkins*, 496 U.S. 292 (1990)........................................   22,23

*Jones v. United States,* 526 U.S. 227 (1999)................................   25,26

*Lauro v. Charles*, 219 F.3d 202 (2d Cir. 2000)..............................   13

iii

*Miller v. California*, 413 U.S. 15 (1973)............................................. 6

*New York v. Ferber*, 458 U.S. 747 (1982)........................................ 6

*Ornelas v. United States,* 517 U.S. 690 (1996)............................. 1,20

*Orozco v. Texas*, 394 U.S. 324 (1969).......................................... 23

*Payton v. New York*, 445 U.S. 573 (1980).................................... 13

*People v. Baley*, 252 A.D.2d 815, 675 N.Y.S.2d 706
    (3d Dept. 1998)..................................................................... 27

*People v. Bergerson*, 17 N.Y.2d 398, 271 N.Y.S.2d 236 (1966).... 27

*People v. Ferber*, 57 N.Y.2d 256 (1982)........................................ 29

*People v. Fogler*, 184 A.D.2d 270, 585 N.Y.S.2d 26 (1992).......... 27

*People v. Gilmour*, 177 Misc.2d 250, 678 N.Y.S.2d 436 (1998)..... 29

*People v. Goodridge*, 251 A.D.2d 85, 675 N.Y.S. 2d 24
    (1st Dept. 1998)................................................................... 26

*People v. Jacobsen*, 255 A.D.2d 951 (4th Dept. 1998).................. 27

*People v. Simmons*, 92 N.Y.2d 829, 677 N.Y.S.2d 58 (1998)........ 26

*Rivera v. United States,* 928 F.2d 592 (2d Cir. 1992).................... 10,11

*Rhode Island v. Innis*, 446 U.S. 291 (1980)................................... 23

*Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155 (1993)............... 1

*Shepard v. United States,* ___ U.S. ___, 125 S. Ct. 1254 (2005)..... 21,24,25,26,27

*Smith v. United States,* 507 U.S. 197(1993).................................. 1

*Stansbury v. California*, 511 U.S. 318 (1994)................................ 22

*Taylor v. United States,* 495 U.S. 575 (1990)................................ 25

*United States v. Bailey*, 444 U.S. 394 (1980)................................. 2

*United States v. Babwah*, 972 F.2d 30 (2d Cir. 1992)..................... 21

*United States v. Brown*, 951 F.2d 999 (9th Cir. 1991)...................... 13,14

*United States v. Bakhtiari*, 913 F.2d 1053 (2d Cir. 1990)............... 12

*United States v. Canfield*, 212 F.3d 713 (2d Cir. 2000)................. 10

*United States v. Clark*, 454 U.S. 555 (1982)................................. 2

*United States v. Clark*, 315 F.Supp.2d 1127 (W.D. Wash. 2004)... 5

*United States v. Coreas*, 419 F.3d 151 (2d Cir. 2005)................... 18,19

*United States v. Crews*, 445 U.S. 463 (1980)................................ 21

*United States v. Fisher*, 702 F.2d 372 (2d Cir. 1983).................... 21

*United States v. Gatlin*, 216 F.3d 207 (2d Cir. 2000)..................... 1

*United States v. Gourde*, 381 F.3d 1003  (9th Cir. 2004)................ 15

*United States v. Jacobs*, 986 F.2d 1231 (8th Cir. 1993)................. 11

*United States v. Killip*, 819 F.2d 1542 (10th Cir. 1987).................. 13

*United States v. Lifshitz*, 369 F.3d 173 (2d Cir. 2004).................... 20

*United States v. Marchand*, 308 F.Supp 2d 498 (D. N.J. 2004)...... 7

*United States v. Martin*, 418 F.3d 148 (2d Cir. 2005)..................... 15,16,17,18,19,20

*United States v. Martin*, ___ F.3d ___  2005
    WL3086838  (2d Cir. 2005)................................................ 19

*United States  v. Myers*, 355 F3d 1040 (7th Cir. 2004)................... 8

*United States v. Pearl*, 324 F.3d 1210 (10th Cir. 2003)................. 7

*United States v. Penna*, 961 F.2d 333 (2d Cir. 1992).................... 12

*United States v. Perez*, 247 F.Supp.2d 459 (S.D.N.Y. 2003)......... 11

*United States v. Pungatore*, 910 F.2d 1084 (3d Cir. 1990)............ 13

v

*United States v. Rubio*, 727 F.2d 786 (9th Cir. 1984).....................  13

*United States v. Scarfo*, 711 F.Supp. 1315 (E.D.P.A. 1989)..........  13,14

*United States v. Spencer*, 995 F.2d 814 (2d Cir. 1992).................  21

*United States v. Szymaniak*, 934 F.2d 434 (2d Cir. 1991)..............  23

*United States v. Thompson*, 35 F.3d 100 (2d Cir. 1994)...............  21

*United States v. Travisano*, 724 F.2d 341 (2d Cir. 1983)..............  12

*United States v. Whitley*, 249 F.3d 614 (7th Cir. 2001)..................  11

*Wilson v. Layne*, 526 U.S. 603 (1999)............................................  13

*Wilson v. Russo*, 212 F.3d 781 (3rd Cir. 2000)...............................  11

*Wong Sun v. United States,* 371 U.S. 471 (1963).........................  21

*Ybarra v. Illinois,* 444 U.S. 85 (1979)...............................................  14,18

*Zurcher v. Stanford Daily,* 436 U.S. 547 (1978)............................  12

TABLE OF AUTHORITIES
Statutes

Page

18 U.S.C. § 922(g)(1).................................................   24

18 U.S.C. § 2251(a).................................................   1,2,3,4,5,24,28

18 U.S.C. § 2251(e).................................................   28

18 U.S.C. § 2252A(a)(2)(A) and (B), and § 2256..................   5,6,7,8,9,24,28

18 U.S.C. § 2260(a).................................................   3,4,5

18 U.S.C. § 2423.................................................   4

## A.  MOTION TO DISMISS INDICTMENT OR INDIVIDUAL COUNTS

### 1.  COUNTS 3 THROUGH 10 OF THE INDICTMENT MUST BE DISMISSED.

Counts 3 through 10 of the Indictment involve eight photographs allegedly taken by Mr. Falso while on vacation in foreign countries.  The photographs purportedly are images of minors engaged in sexually explicit conduct.  The Government alleges that the taking of such photographs constitutes eight separate violations of 18 U.S.C. § 2251(a).  As discussed below, Section 2251(a) does not apply to the taking of such photographs in foreign countries and therefore said counts should be dismissed as a matter of law.

Courts lack jurisdiction over crimes committed in foreign jurisdictions unless such jurisdiction has been expressly conferred by a law passed by Congress.  *See, United States v. Gatlin*, 216 F.3d 207 (2d Cir. 2000).  In determining whether a statute is to be applied extra-territorially, a court is guided by the general "presumption that acts of Congress do not ordinarily apply outside our borders."  Id.; *Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 173 (1993); *E.E.O.C. v. Arabian American Oil Co.,* 499 U.S. 244, 248 (1991) ("it is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.").  Congress "generally legislates with domestic concerns in mind."  *Smith v. United States,* 507 U.S. 197, 204 n. 5 (1993).  While Section 2251(a) clearly applies to the taking of photographs of minors engaged in sexually explicit conduct within the United States, it does not apply to the taking of such photographs in foreign countries.

The interpretation of Section 2251(a) is determined by (1) the language of the

1

statute, (2) its legislative history, and (3) the underlying objectives of the statute. *United States v. Bailey*, 444 U.S. 394, 406 (1980); *United States v. Clark*, 454 U.S. 555, 561 (1982).

Section 2251(a) has two distinct clauses.  The first clause describes the elements of the crime and the second clause further conditions the crime on a determination that the photograph produced as a result of the crime traveled in interstate or foreign commerce. With respect to the first clause, the crime has three distinct elements: The person must (1) use or persuade a minor; (2) with the intent that such minor engage in sexual explicit conduct; (3) for the purpose of producing a photograph of such conduct.  Importantly, Congress did not expressly state that the foregoing elements applied to acts committed outside the United States.

In fact, Section 2251(a) contains a phrase (not applicable to the case at bar) that does apply to conduct outside the United States.  Specifically, Section 2251(a) also sanctions a person who "transports any minor in . . . foreign commerce" intending to photograph the minor while engaged in sexually explicit conduct.  In other words, a person violates Section 2251(a) if they bring a child from the United States into a foreign country, or bring a child from a foreign country into the United States, with the intent that such minor engage in sexually explicit conduct for the purpose of producing a photograph of such conduct.  By expressly applying Section 2251(a) to such limited conduct in foreign countries (transportation of a minor), Congress necessarily excluded all other conduct committed in foreign countries from the reach of the statute.

Significantly, Congress sanctioned the acts alleged to have been committed by Mr. Falso in Counts 3 through 10 in a separate and distinct statute that imposes significantly

less severe punishment.  In virtually identical language,  Section 2260(a) of Title 18 of the

United States Code provides that:

> A person who, *outside the United States,* employs, uses, persuades,
> induces, entices, or coerces any minor to engage in, or who has a minor
> assist any other person to engage in, or who transports any minor with the
> intent that the minor engage in any sexually explicit conduct for the purpose
> of producing any visual depiction of such conduct, intending that the visual
> depiction will be imported into the United States or into waters within twelve
> miles of the coast of the United States, shall be punished as provided in
> subsection (c) [of 18 U.S.C. § 2260].

18 U.S.C. § 2260(a) (*emphasis added*).

By its own terms, Section 2260(a) was intended by Congress to sanction the

conduct that is the subject of Counts 3 through 10 of the Indictment.  To construe Section

2251(a) such that it also sanctions such conduct would render Section 2260(a)

superfluous.  It is a well-settled rule of statutory construction that a court will not read

statutes in a manner that renders statutory language superfluous.  *See, Babbitt v. Sweet

Home Chapter of Cmtys. for a Great Or,* 518 U.S. 687, 698 (1995); *Filler v. Hanvit Bank*,

378 F.3d 23 (2d Cir. 2004); *California Public Employees Retirement System v. World Com.,

Inc.*, 368 F.3d 86 (2d Cir. 2004); *Blumenthaul v. United States Department of Interior*, 228

F.3d 82 (2d Cir. 2000);  *Bell v. Reno*, 218 F.3d 86 (2d Cir. 2000).

Congress first enacted Section 2251 in 1978.  See, Pub. L. 95-225, § 2(a), Fed. 6,

1978, 92 Stat. 7.  Congress later enacted Section 2260 in 1994.  See Pub. L. 103-322,

Title XVI, § 160001(a), September. 3, 1994, 108 Stat. 2036.  When Congress first enacted

Section 2251, it made certain findings that made clear that Congress was solely concerned

with the domestic sexual exploitation of children in the United States.  Specifically,

Congress made the following findings:

Congress finds that -

"(1) child pornography has developed into a highly organized, multi-million-dollar industry which operates on a *nationwide scale*;

"(2) *thousands of children including large numbers of runaway and homeless youth* are exploited in the production and distribution of pornographic materials; and

(3) the use of children as subjects of pornographic materials is harmful to the psychological, emotional, and mental health of the individual child *and to society*."

Pub. L. 98-292, § 2. (*emphasis added*).

The foregoing confirms that Section 2251(a) was not intended to apply to acts involving minors in foreign countries and that Section 2260 was later enacted to expand criminal sanctions to such foreign acts.  Significantly, Section 2260 does not contain statutory minimum sentencing provisions.  Obviously, Congress decided that more severe penalties should be imposed when the harm is committed against minors in the United States, but that the interest of the United States is somewhat less when the acts are committed in foreign countries.

As if to emphasize the point, Congress found it necessary to enact legislation in 2003 to cover acts involving minors in foreign countries.  Title 18 U.S.C. Section 2423.  (In fact, the Indictment charges Mr. Falso with violation of Sections 2423(b) and (c) in other counts.).  Significantly, Section 2423, prior to its amendment in 2003, only criminalized travel in interstate commerce with the intent to engage in a sexual act with a minor.  Congress found it necessary to amend Section 2423 to expressly include travel in foreign commerce and acts committed in foreign places.

Applying the foregoing to the analysis to Section 2251(a), Congress did not

4

expressly authorize in Section 2251(a) the application of such section to the taking of photographs of minors in foreign countries. Rather, Congress enacted Section 2260(a) to apply to such conduct. *See, United States v. Clark*, 315 F.Supp.2d 1127 (W.D. Wash. 2004). Therefore, Counts 3 through 10 of the Indictment must be dismissed.

### 2. COUNTS 11 THROUGH 233 OF THE INDICTMENT MUST BE DISMISSED.

Counts 11 through 233 of the Indictment charge Mr. Falso with receiving child pornography via the Internet in violation of 18 USC Sections 2252A(a)(2)(A) and (B), and Section 2256. The conduct is alleged to have occurred between July, 2000, and June 8, 2005.

Section 2256(8), effective April 30, 2003, defines "child pornography" in the following manner:

> ...any visual depiction, including any photograph, film, video, picture or computer or computer- generated image or picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where–
>
> (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;
>
> (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or
>
> (C) such visual depiction has been created, adapted or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

The prior statute, in existence until April 30, 2003, was struck down by the United States Supreme Court in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002). In that case, the Supreme Court held that the inclusion of a ban on virtual images violated the First Amendment. In so holding, the Court stated that the statute:

"covers materials beyond the categories recognized in *Ferber* and *Miller*, and the reasons the Government offers in support of limiting the freedom of speech have no justification in our precedents or in the law of the First Amendment.  The provision abridges the freedom to engage in a substantial amount of lawful speech.  For this reason, it is overbroad and unconstitutional."

*Id.* at 256.

The Court noted that the connection between virtual images and the abuse of children, essential to a ban under the standard of *New York v. Ferber*, 458 U.S. 747 (1982), was far too speculative to support the ban in this case.  It also held that the statute failed to take into account the standards of prurient interest, patent offense and contemporary community standards required by *Miller v. California*, 413 U.S. 15 (1973).

In the instant Indictment, the counts do not specify whether the receipt of the images alleged to constitute child pornography occurred before or after April 30, 2003.  If receipt of the images occurred prior to that date, then the prosecution of such receipt is based upon an unconstitutional definition of child pornography, and must be dismissed pursuant to *Ashcroft*.  As no such dates are alleged, the counts themselves are defective on their face.

Even if this were not the case, and the prosecution were allowed to sever those counts alleged to be based upon receipt after April 30, 2003, the defendant would still be entitled to dismissal of all the counts in this group.  This is true for the simple reason that the 2003 amendments to Section 2256(8) do not cure the basic defect found by the Supreme Court.  The statute still bars the receipt of images that are not of actual minors, and still, with respect to those images, bars material which may be outside the categories in *Ferber* and *Miller*.  *See* Section 2256(8)(B) and (C).  Thus, the statute

6

remains unconstitutional under *Ashcroft* to that extent.

Obviously, the holding in *Ashcroft* did not bar all proceedings alleging receipt of child pornography.  *See United States v. Pearl*, 324 F.3d 1210 (10th Cir. 2003), *United States v. Marchand*, 308 F.Supp 2d 498 (D. N.J. 2004).  Where the prosecution is able to plead and prove that the images received by a defendant are in fact images of an actual minor engaged in sexually explicit conduct, *Ashcroft's* holding will not inure to the defendant's benefit.

This is, however, not the case with these counts in the instant Indictment.  Since Section 2252A relies upon Section 2256(8) to provide the definition of child pornography, and the prosecution has alleged neither the dates of the images nor that they are of actual minors, no prosecution against Mr. Falso can properly lie under Section 2252A, and those counts should be dismissed by the Court.

Additionally, Counts 11 through 233 should be dismissed, as there is no basis to establish that the receipt of the images charged therein occurred within the applicable limitations period.  While there is a date on the copy of each such image indicating when it was printed, there is no basis to determine when the image was purportedly received by the defendant.  See pars. 41 through 44 of the affidavit of Thomas A. Saitta, Esq. (hereinafter referred to as the Saitta affidavit).  Such images could have been received years before they were printed. Without a determination of the date these images are alleged to have been received by the defendant, the Government cannot establish that such receipt occurred during the applicable limitations period.

Moreover, mere possession of the images within the limitations period would not be sufficient for a conviction under 18 U.S.C. §2252A(a)(2).  It is well established that

7

mere possession of child pornography does not constitute receipt thereof within the meaning of the statute.  In *United States  v. Myers*, 355 F3d 1040, 1042, (7th Cir. 2004), the Court recognized the distinct nature of these two acts noting that one can be guilty of possessing child pornography without being guilty of receiving it.  It specifically held that, "... possession and receipt are not the same conduct and threaten distinct harms..." Id., at 1043.

Accordingly, Counts 11 through 233 must be dismissed.

**3.  COUNTS 234 THROUGH 241 OF THE INDICTMENT MUST BE DISMISSED.**

With regard to counts 234 through 241 of the Indictment, much the same analysis applies as was set forth above regarding counts 11 through 233.  These counts allege the transportation and shipping of child pornography in violation of 18 USC Section 2252A(1) and 2256.

As is true of counts 11 through 233, these counts do not set forth a date of alleged shipment or transportation.  Further, as is also true of the prior counts, these counts rely upon Section 2256(8) to provide the definition of child pornography.

Thus, to the extent that the alleged conduct occurred before April 30, 2003, the charges would be founded upon an unconstitutional statute and thus not susceptible to prosecution.  To the extent that the alleged conduct occurred after that date, the charges would again be founded upon an unconstitutional statute absent pleading and proof that the images/pictures were of actual minors.

Therefore, these counts should also be dismissed pursuant to the holding in *Ashcroft* and the analysis above.

8

### 4.  COUNT 242 OF THE INDICTMENT MUST BE DISMISSED.

As with the prior counts, Count 242 should be dismissed, as it suffers from the same infirmity.  This count charges possession of child pornography, and relies upon Section 2256 for its definition of what constitutes child pornography.  It generally alleges this possession to have occurred between July, 2000, and June 8, 2005.  As we have already seen, Section 2256(8), which defines child pornography, was declared to be unconstitutional in 2003.  To the extent that the alleged conduct occurred prior to April 30, 2003, the charge is founded upon an unconstitutional statute.  To the extent that it occurred thereafter, the amended statute does not cure the problem and, absent pleading and proof that the images were of actual minors, the charge must be dismissed.

### B.  PHYSICAL EVIDENCE AND STATEMENTS OF THE DEFENDANT WERE OBTAINED IN VIOLATION OF THE DEFENDANT'S CONSTITUTIONAL RIGHTS AND MUST BE SUPPRESSED

### 1.  THE SUPPORTING AFFIDAVIT FALSELY STATED THAT MR. FALSO WAS ASSOCIATED AS A SUBSCRIBER TO THE PORNOGRAPHIC WEBSITE

#### A.  The Affidavit is Misleading.

If Mr. Falso was not a subscriber to the website that allegedly contained child pornography, then probable cause did not exist for the search of his home.  See part B., Number 2, *infra*.  Yet the supporting affidavit for the search warrant misled this Court into believing that Mr. Falso was a subscriber to the website.  Specifically, Agent Lyons stated in his affidavit: "Pursuant to a review of the subpoenaed records, the following subscriber information (among others) was associated with the www.cpfreedom.com website: David J. Falso, 20 Peaceful Drive, Cortland, New York, Yahoo User ID: cousy1731@yahoo.com."

9

(Lyons Affidavit, Para. 31). Based on the foregoing statement, a reasonable person would have concluded that Mr. Falso had subscribed to the pornographic website. However, as is set forth in the Saitta affidavit, a careful reading of other portions of the supporting affidavit discloses that Mr. Falso was not a subscriber to the website, and that the Government never had evidence that he was a subscriber. Moreover, as set forth in the affidavit of Mr. Falso's expert, it is highly unlikely that Mr. Falso's Internet Service Provider gave evidence to the Government that Mr. Falso was a subscriber to the website. Therefore, the supporting affidavit was misleading.

B. Mr. Falso Is Entitled To A *Franks* Hearing Based On Such False Or Misleading Statements

The Fourth Amendment prohibits "unreasonable searches and seizures" and mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV. In *Franks v. Delaware,* 438 U.S. 154 (1978), the Supreme Court ruled that a defendant may challenge the validity of a search warrant on the basis that the supporting affidavit contained deliberately or recklessly false or misleading material and that the remainder of the affidavit is insufficient to establish probable cause. Id. at 155-56; *accord United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000). An affidavit may also be misleading if material information is omitted. *Canfield*, 212 F.3d at 718; *Rivera v. United States,* 928 F.2d 592, 604 (2d Cir. 1992).

As stated by the Supreme Court in *Franks*, the affidavit must be "'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Franks*, 438 U.S. at 164. To prove a reckless disregard for the truth, a person must

show that there exist "serious doubts" as to the truthfulness of an allegation.  *United States v. Whitley*, 249 F.3d 614, 621 (7th Cir. 2001); *United States v. Perez*, 247 F.Supp.2d 459, 473 (S.D.N.Y. 2003).  Omissions are made with reckless disregard if a fact is withheld "that 'any reasonable person would have known that this was the kind of thing the judge would wish to know'."  *Wilson v. Russo*, 212 F.3d 781, 788, (3rd Cir. 2000) (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)); *see also, Rivera*, 928 F.2d at 604 ("recklessness may be inferred where the omitted information was 'clearly critical' to the probable cause determination.")

The issue of whether Mr. Falso was a subscriber or member of the pornographic website is one of the central determinations on whether probable cause existed for the issuance of the search warrant of Mr. Falso's home.  While Mr. Falso was a "subscriber" to Roadrunner (his Internet Service Provider), Agent Lyons misused the term so as to give the impression that Mr. Falso was also a subscriber of the pornographic website.  He was not.  Likewise, the allegation that Mr. Falso contacted or attempted to contact the website was misleading.  Mr. Falso demands a *Franks* Hearing to establish that the foregoing statements were false and misleading and that the remaining portions of the Lyons affidavit do not satisfy the probable cause standard.

## 2.  THE SEARCH WARRANT APPLICATION LACKED PROBABLE CAUSE

### A.  The need for Probable Cause

A search warrant must be based "upon probable cause."  U.S. Const. Amend. IV. Probable cause does not exist unless the known facts and circumstances demonstrate a "reasonable belief" that "contraband or evidence of a crime will be found" in the place

to be searched.  *Ornelas v. United States,* 517 U.S. 690, 696 (1996).  "It is untenable to conclude that property may not be searched unless its occupant is reasonably suspected of a crime and is subject of an arrest."  *Zurcher v. Stanford Daily,* 436 U.S. 547, 559 (1978).  A search warrant may only be issued "when it is satisfactorily demonstrated to the magistrate that fruits, instrumentalities, or evidence of crime is located on the premises."  Id.

A judge reviewing a search warrant application must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  "Probable cause is a fluid concept - - turning on the assessment of probabilities in particular factual contexts - - not readily, or even usefully, reduced to a neat set of legal principles."  *Illinois v. Gates*, 462 U.S. at 232.  Nonetheless, probable cause is "more than bare speculation."  *Brinegar v. United States,* 338 U.S. 160, 175-76 (1949).

Probable cause means a "probability or substantial chance of criminal activity."  *United States v. Bakhtiari*, 913 F.2d 1053, 1062 (2d Cir. 1990).  A judge to whom a search warrant application is made must find probable cause to believe (1) that a crime has been committed and (2) that evidence of the crime will be found in the place to be searched.  *See, United States v. Travisano*, 724 F.2d 341, 346 (2d Cir. 1983); *United States v. Penna*, 961 F.2d 333, 339 (2d Cir. 1992).

The affidavit must state "particularized facts" that allow the judge to draw the

necessary inferences to find probable cause.  *Giorbenello v. United States,* 357 U.S. 480, 485-86 (1958); *see, Gates*, 462 U.S. at 239 ("sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.").   The judge must make an independent evaluation of the affidavit and may not merely rely on the claims of the affiant without question.  Id.

Although there is "a presumption of validity with respect to an affidavit supporting a search warrant, nonetheless, the "sanctity of the private home" occupies a "special status" and courts have acknowledged the "gravity [that] the Fourth Amendment accords to government intrusions on that privacy."  *Franks*, 438 U.S. at 171; *Lauro v. Charles*, 219 F.3d 202, 211 (2d Cir. 2000); *Wilson v. Layne*, 526 U.S. 603, 610 (1999).  Significantly, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."  *Payton v. New York*, 445 U.S. 573, 586 (1980).

   B.  Membership In A Wholly Illegal Organization

In the context of conspiracy prosecutions, some courts have held that membership in a wholly illegal organization is relevant to determining the existence of probable cause. *See, e.g., United States v. Killip*, 819 F.2d 1542, 1550 (10th Cir. 1987); *United States v. Scarfo*, 711 F.Supp. 1315, 1339 (E.D.P.A. 1989) *aff'd sub nom*; *United States v. Pungatore*, 910 F.2d 1084 (3d Cir. 1990).  However, other courts have held that mere membership in a wholly illegal organization does not necessarily provide probable cause. *See, e.g., United States v. Brown*, 951 F.2d 999, 1003 (9th Cir. 1991) (membership of police officer in corrupt police unit was not sufficient for probable cause without additional

13

proof that the officer actually participated in illegal activities); *United States v. Rubio*, 727 F.2d 786, 793-94 (9th Cir. 1984) (membership in Hells Angels, without more, is insufficient to demonstrate probable cause without particularized allegations that the individual actually participated in the criminal activities of the organization).

Moreover, "where an organization is not so 'wholly illegitimate' that membership itself necessarily implies criminal conduct, membership alone cannot provide probable cause." *United States v. Brown*, 951 F.2d 999, 1003 (9th Cir. 1991). Typically, the concept that membership in a wholly illegal organization can supply probable cause has been applied to organized crime, which requires lengthy apprenticeship and elaborate initiation. *See, Scarfo*, 711 F.Supp at 1339, (describing initiation requirements, including killing of a judge as well as participating in a "making ceremony," and concluding that, given the group's formal structure, attaining membership implied agreement in all of the group's illegal purposes).

Importantly, the Supreme Court has held that "mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *See, Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). Instead, probable cause must be based on "particularized facts." *See, Ybarra*, 444 U.S. at 91 ("where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person."). Although a judge reviewing a search warrant application may "make a practical, common-sense decision," such decision must be based on the "circumstances set forth in the affidavit." *Gates*, 462 U.S. at 238.

14

Finally, a search warrant affidavit is often premature because the Government can develop particularized information once it has identified a website as containing illegal pictures.  Upon doing so, the Government can "monitor[ ] the traffic to that website and ascertain[ ] which members actually download[ ] pornography."  See, *United States v. Gourde*, 381 F.3d 1003, 1012 (9th Cir. 2004).

     C.  Child Pornographic Websites: The "Candyman" Cases

The Second Circuit recently wrestled with the very issue before this Court in a series of opinions called "the Candyman cases."  The Candyman cases demonstrate that the Government must, at a minimum, have evidence that a person is (1) a member of the pornographic website, and (2) that the "overriding, if not sole purpose" of the website was the trading of child pornography. In the case at bar, the Government had neither.

In *United States v. Martin*, 418 F.3d 148 (2d Cir. 2005), the Second Circuit held that probable cause existed for a search warrant that was issued in relation to "Operation Candyman," an extensive government investigation against persons suspected of downloading child pornography from the internet.  The supporting affidavit in *Martin* described three separate child pornography "e-groups." (an e-group is an internet forum that permits individuals to interact by e-mail and "chat" on line by posting messages, pictures and videos to the group's website).  The three groups were named "Candyman," "girls12-16;" and "shangri-la."  *Martin* was a member of "girls12-16."  The website for girls12-16 had similar features to "Candyman."  The "Candyman" web page stated that "this group is for people who love kids" and that members could post "any type of pics or vids you like. . . ."  The Candyman web page declared that "IF WE ALL WORK TOGETHER WE WILL HAVE THE BEST GROUP ON THE NET."  Id. at 150-51.

The supporting affidavit submitted in support of the search warrant went into great detail on the technical features of the website, including a "Files" section that allowed members to post images and videos for other members to "download." Other technical features including a Polling section, a Links section, a "Chat" section and an "E-mail list." An FBI agent, working undercover, became a member of the Candyman e- group. The agent then downloaded approximately 100 pictures and movies of child pornography and received nearly 500 e-mails which had attached approximately 300 files containing child pornography or child erotica.

The defendant in *Martin* belonged to the "girls12-16" e-group. The website for the "girls12-16" e-group contained an even more extensive welcome message on its web page that made it unmistakably clear that the "overriding, if not sole, purpose" of the "girls12-16" website was to share, download and collect child pornography with its members. At the outset, members were greeted with the following explicit introduction: "This group is for all those ho [sic] appreciate the young female in here [sic] finest form. Watching her develop and grow is like poetry in motioon [sic], to an age where she takes an interest in the joys and pleasures of sex." The welcome message invited members to share information regarding their current "model" for photography, where to meet young girls, the preferred way to "chat them up," and "girls you would like to share with others." The welcome page "made clear that members could 'post videos and photographs' of girls." Id. The website encouraged members to "share all kinds of other information as well." It further stated that "this is the place to be if you love 11 to 16 year olds." Finally, the "girls12-16" website conditioned membership on "post[ing] something" to the website so that others might share and download the child pornography. Id.

16

A magistrate granted a search warrant based on the foregoing allegations.  A search of the defendant's home revealed child pornography on the defendant's computer.  Later, the Government conceded that the supporting affidavit contained a misstatement regarding whether e-mails were automatically sent to all members.  The majority in *Martin* (Judges Walker and Wesley) held that the corrected affidavit nonetheless contained sufficient facts to establish probable cause.  Judge Pooler filed a dissent.

The majority based its opinion on two essential findings:  (1) that the defendant was a member of the "girls12-16" e-group, and (2) that "the overriding, if not sole, purpose" of the girls12-16 e-group was the trading of child pornography.  Given such findings, "membership in the e-group reasonably implied use of the website" to download child pornography.

The majority in *Martin* reasoned that the welcome message "unabashedly announced that its essential purpose was to trade child pornography."  Also, "the title of the e-group, 'girls12-16,' further made plain that the site's focus was on minor girls."  Id. at 155.  In addition, the probability that members were downloading child pornography from the website "could be inferred from the website's technological features (files, messages, polls, e-mail, links, polls, chat, and membership lists) that facilitated the trading in child pornography."  Id. at 156.  Moreover, "the agent confirmed that the material uploaded and downloaded on the "girls12-16" site included child pornography and child erotica, and that this material was available to all members."  Finally, the affidavit stated that the defendant joined "girls-12-16 voluntarily and never cancelled his membership."

In sum, the majority in *Martin* stated that the supporting affidavit had demonstrated that the defendant "was a member of the girls12-16 e-group, whose raison d'etre, or

17

primary reason for existence was the trading and collection of child pornography - - a wholly illegal endeavor." Id. at 156.  The majority decided that "it is common sense that an individual who joins such a site would more than likely download and possess such material."  Therefore, there existed probable cause to believe that the defendant had downloaded child pornography from the website and that such child pornography was probably on his home computer.

Only two weeks after the majority issued its opinion in *Martin*, a separate panel of the Second Circuit in *United States v. Coreas*, 419 F.3d 151 (2d Cir. 2005) held that probable cause was lacking for a similar search warrant in another Candyman prosecution. The panel in *Coreas* unanimously held that "even if the sole purpose of Candyman had been to distribute pornography, the claim that mere membership in an organization with an illegal purpose establishes probable cause is in conflict with the dictate of *Ybarra* that probable cause be backed, at least in part, by evidence particularized to the target of the search."  The panel in *Coreas* criticized the majority in *Martin* but nonetheless held that it was bound to follow *Martin* because *Martin* had been decided two weeks earlier.

In the meantime, the defendant in *Martin* petitioned the first panel for rehearing.  On October 3, 2005, the majority in *Martin* denied the defendant's petition.  *United States v. Martin*, 426 F.3d 83 (2d Cir. 2005).  Importantly, the majority issued an opinion clarifying the basis for its initial ruling that there existed probable cause under the redacted affidavit. The majority stated that "the *Coreas* panel . . . was presented with a separate question whether the redacted affidavit was sufficient to support a showing of probable cause where the defendant was a member of the 'Candyman' e-group, not the 'girls12-16' e-group."  The

18

majority stated that the Candyman site had a "far less descriptive title and welcome message."  The majority stated that "we need to clarify that we do not view the differences between the two welcome messages as 'immaterial'."  Rather, the girls12-16 welcome message was an integral component of our probable cause determination."

According to the majority in *Martin*, probable cause had been established in the redacted affidavit where it demonstrated that "individuals that sought membership in the e-group were presented with the name of the group and its detailed welcome message; that members of the e-group were actively uploading and downloading child pornography on the site and exchanging e-mail with illicit attachments; and that a majority of the text only e-mail was generated automatically as a means to inform members that new child pornography had been uploaded onto the site."  Under such circumstances, "anyone joining the girls12-16 site was on notice that the site was an active marketplace for the illicit trade of child pornography."  Judge Pooler again dissented.

On November 18, 2005, the Second Circuit e*n banc* denied rehearing *en banc* of both *Martin* and *Coreas*.  *United States v. Martin*, ___ F.3d ___  2005 WL3086838 (2d Cir. 2005).  Judge Wesley wrote a concurring opinion and Judge Pooler dissented.  Judge Wesley emphasized that the redacted affidavit in *Martin* had established probable cause based on the foregoing critical findings.

   D.  Lyons' Affidavit Did Not Meet The Minimum Criteria Set Forth In *Martin* For
   Establishing Probable Cause

*Martin* and its progeny governs the analysis of whether the Lyons' affidavit established probable cause.  The difference in opinion among the judges of the Second Circuit on the issue demonstrates that the *Martin* opinion represents the outer limits for

19

establishing probable cause.  A failure to meet the minimum criteria set forth in the *Martin* opinion will require a finding that probable cause is lacking.

As detailed in the Saitta affidavit, the allegations set forth in Lyons' affidavit did not meet the minimum criteria set forth in *Martin*.  To establish probable cause under such circumstances the affiant must prove two facts:  (1) the defendant was a member of the website; and (2) "the overriding, if not sole, purpose" of the website was the trading (and not merely viewing) of child pornography.  Neither criteria was met in the case at bar.

Finally, the fact that Mr. Falso had a prior conviction for Endangering the Welfare of a Child also did not provide probable cause to believe that Mr. Falso's home or computer contained evidence of child pornography.  First, it is well settled that a prior conviction for the same crime does not establish probable cause that a person has again committed that crime.  *United States v. Lifshitz*, 369 F.3d 173 (2d Cir. 2004) (to establish probable cause, "it is not enough to suspect that someone has committed a particular crime only because of a prior criminal conviction.") Instead, "[t]he principal components of a determination of . . . probable cause will be the events that occurred leading up to the stop or search. . . ." *Orneles v. United States,* 517 U.S. 690, 696 (1996).  For example, "[t]here is, indeed, a nearly universal consensus that the criminal status of a probationer cannot, viewed on its own, be sufficient to support a determination that 'reasonable suspicion' exists," let alone probable cause."  *Lifshitz*, 369 F.3d at 188.

Second, Mr. Falso's conviction for Endangering the Welfare of a Child is not the same as the crime of child pornography.  Any attempt to draw a connection between the two crimes is purely speculative.

Finally, the crime of Endangering the Welfare of a Child encompasses a broad

20

range of conduct and is not limited to conduct that is sexual in nature.  Although the Lyons'
affidavit attempted to rely on the allegations underlying allegations contained in reports,
such reliance is not permissible.  *Shepard v. United States,* ___ U.S. ___, 125 S. Ct. 1254
(2005).  See Part C, *infra*.  Therefore, no inference may be drawn against Mr. Falso based
on such conviction.

Mr. Falso demands a hearing to establish his contentions herein.

**3. STATEMENTS ATTRIBUTED TO MR. FALSO MUST BE SUPPRESSED**.

Mr. Falso contends that the statements that it is alleged he gave during the search
of his home to Government agents must be suppressed on two grounds:  (1) the statement
was the "fruit of the poisonous tree;" and (2) Mr. Falso was at the time in custody and
subject to questioning and the agents failed to read him his *Miranda* warnings.

A.  The Statement Was The "Fruit Of The Poisonous Tree"

If this Court holds that the physical evidence seized from Mr. Falso's home violated
his rights under the Fourth amendment in that the search warrant lacked probable cause,
then Mr. Falso's statement to agents must likewise be suppressed in that the statement
would not have been given but for the unconstitutional search.

The exclusionary rule prohibits the introduction of evidence obtained through the
direct and indirect result of an unlawful search and seizure.  *See, Wong Sun v. United
States,* 371 U.S. 471, 484-85 (1963).  As such, exclusion not only applies to physical
evidence seized in an illegal search but also to "confessions or statements of the accused.
. . ."  *United States v. Crews*, 445 U.S. 463, 470 (1980).  *See also, United States v.
Babwah*, 972 F.2d 30, 34 (2d Cir. 1992); *United States v. Spencer*, 995 F.2d 814, 819-20

(2d Cir. 1992); *United States v. Fisher*, 702 F.2d 372, 379 (2d Cir. 1983).

The question of attenuation may arise where a statement to the police is made during or after an illegal detention.  *See, e.g., United States v. Thompson*, 35 F.3d 100, 105-06 (2d Cir. 1994).  Courts have considered several factors in determining whether attenuation was occurred, including whether *Miranda* warnings were given, "[t]he temporal proximity of the arrest and confession, the presence of intervening circumstances, . . . and particularly, the purpose and flagrancy of the official misconduct."  *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975).

In the case at bar, Mr. Falso's statement to police was the "fruit of the poisonous tree" in that Government agents conducted an illegal search and simultaneously questioned Mr. Falso in his home in an attempt to obtain admissions regarding his possession of child pornography.  The questioning was not attenuated, in that *Miranda* warnings were not given, and the statement was made simultaneous with the execution of the search warrant.  Undoubtedly, Mr. Falso believed that he might as well give a statement because during the execution of the search warrant the agents would find evidence of child pornography.  Had the illegal search not occurred, Mr. Falso would not have given any statement to Government agents.

### B.  Mr. Falso Was Not Given His *Miranda* Warnings

Government agents are required to give "*Miranda* warnings" when a defendant is subjected to "custodial interrogation."  *Illinois v. Perkins*, 496 U.S. 292, 296 (1990).  A defendant is in custody for *Miranda* purposes when he or she is not free to leave.  *California v. Beheler*, 463 U.S. 1121, 1125 (1983).  An objective test is applied, based on

the view of a reasonable person in the defendant's position.  *See, Berkemer v. McCarthy*, 468 U.S. 420, 442 (1984).  *See also, Stansbury v. California*, 511 U.S. 318, 324-25 (1994). For example, the questioning of a defendant in his home may constitute "custody" if the agents use coercive tactics or otherwise indicate that the defendant is not free to leave or to terminate the interview.  *See, e.g. Orozco v. Texas*, 394 U.S. 324, 327 (1969).

"Interrogation" includes express questioning, as well as its "functional equivalent," meaning "any words or actions on the part of the police, (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response."  *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).  Whether interrogation has occurred is subjective and based on "the perspective of the suspect." *Perkins*, 496 U.S. at 296.  Confronting a defendant with incriminating information and asking him to make a statement is interrogation.  *See, United States v. Szymaniak*, 934 F.2d 434, 439 (2d Cir. 1991).

The affidavit of Mr. Falso in support of the motion sets forth the conditions under which the statements were elicited, and it establishes that no *Miranda* warnings were given. Further, the report prepared by Agent Lyons regarding the "interview" of Mr. Falso at no point states that he read Mr. Falso his *Miranda* warnings.  Instead, the report reflects that contemporaneous with the search of Mr. Falso's home, Agent Lyons requested to speak to Mr. Falso.  The search of the home disclosed evidence of child pornography and Mr. Falso was not free to leave.  Nonetheless, agents questioned Mr. Falso and obtained incriminating admissions from him.  Under the circumstances, Mr. Falso contends that he was in custody and subject to interrogation.  Therefore, his *Miranda* warnings should have

23

been provided to him.  Mr. Falso demands a hearing on this issue.

## C.  MR. FALSO'S PRIOR CONVICTION MAY NOT BE USED TO ENHANCE HIS SENTENCE AND SHOULD BE STRICKEN FROM THE INDICTMENT AS SURPLUSAGE

Counts 3 through 10 of the Indictment seek to enhance the potential sentence that Mr. Falso may receive, based on the claim that he has "a prior final conviction under the laws of a state for offenses relating to the sexual exploitation of children. . . ."  Under 18 U.S.C. Section 2251, such prior final conviction, if applicable, would result in a statutory mandatory minimum sentence of 25 years.  Similarly, Counts 11 through 242 of the Indictment seek to enhance Mr. Falso's sentence based on an alleged "prior final conviction under the laws of a state for offenses relating to sexual abuse and abusive of sexual conduct involving a minor. . . ."  Under 18 U.S.C. 2252A, such  prior final conviction would result in a statutory minimum sentence of ten years.

The Government's claim that such enhanced sentence should be applied is based on the fact that in 1987 Mr. Falso pled guilty to a charge of "Endangering the Welfare of a Child" under New York Penal Law Section 260.10(1).  As discussed below, said conviction may not be used to enhance Mr. Falso's sentence on several grounds.

### 1.  UNDER THE SUPREME COURT'S RECENT DECISION IN *SHEPARD,* MR. FALSO'S CONVICTION FOR "ENDANGERING THE WELFARE OF A CHILD' MAY NOT BE USED AS A "PRIOR CONVICTION" TO ENHANCE HIS SENTENCE.

In *Shepard v. United States,* ___ U.S. ___, 125 S. Ct. 1254 (2005), the defendant pled guilty to violation of 18 U.S.C. § 922(g)(1), which bars a felon from possessing a firearm.  The defendant's sentencing range under the Sentencing Guidelines was between 30 and 37 months.  However, the Government contended that the defendant  was subject

24

to the 15-year minimum sentence required by Section 924(e), also known as the Armed Career Criminal Act (ACCA).  The ACCA requires a 15-year  sentence for anyone who possesses a firearm after receiving three prior convictions for "serious drug offenses" or "violent felonies."  In *Shepard*, the defendant had four prior convictions (to which he had entered pleas of guilty) under a Massachusetts burglary statute.   However, the Massachusetts burglary statute encompassed not only "generic burglaries" but also other forms of burglary, such as entries into boats and cars.  The Supreme Court had previously held in *Taylor v. United States,* 495 U.S. 575 (1990) that only a "generic burglary" conviction could serve as a predicate "violent felony" under the ACCA.  The Court in *Taylor* had held that a sentencing court may only consider statutory elements, indictment, and jury instructions to determine whether the earlier conviction after a trial was for "generic burglary."

In *Shepard*, such "record" evidence did not exist.  The Government contended that a sentencing court should be permitted to consider other documents, such as police reports, to determine whether the prior conviction based on a guilty plea was for a "generic burglary."  The Supreme Court rejected the Government's contention, holding that a sentencing court could only consider "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information."

A four-justice plurality of the Court reasoned that "a broad evidentiary enquiry" into the factual basis for the prior convictions would likely abridge a defendant's right to a jury trial, citing *Apprendi v. New Jersey, 530 U.S. 466 (2000),* and *Jones v. United States,* 526

25

U.S. 227 (1999).  The plurality observed that the sentencing court had been required to make a disputed finding of fact.  Such "dispute raises the concern underlying *Jones* and *Apprendi*: the Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of the state, and they guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence."  The plurality recognized that the finding of fact required in *Shepard* was "too much like the findings subject to *Jones* and *Apprendi*."

Applying the Supreme Court's decision in *Shepard* to the case at bar, the Government may not use Mr. Falso's prior conviction for "Endangering the Welfare of a Child" as a "prior final conviction" relating to sexual exploitation of a child, sexual abuse or abusive sexual conduct involving a minor to support an enhanced sentence in this case. By definition, the New York State crime entitled "Endangering the Welfare of a Child" covers a broad range of conduct and is not exclusively limited to conduct relating to sexual contact or sexual exploitation of a child.  Section 260.10(1) of the New York Penal Law states, in pertinent part:

> A person is guilty of endangering the welfare of a child when:
>
> 1.  He knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than 17 years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his life or health . . . .

N.Y. Penal Law § 260.10(1).

A person may be guilty of Endangering the Welfare of a Child when shaking an infant and causing injury to the infant.  *People v. Goodridge*, 251 A.D.2d 85, 675 N.Y.S. 2d 24 (1st Dept. 1998).  Likewise, a person may be guilty of such crime when making

26

mocking and vulgar remarks to a child over a period of time. *People v. Simmons*, 92 N.Y.2d 829, 677 N.Y.S.2d 58 (1998). *See also, People v. Bergerson*, 17 N.Y.2d 398, 271 N.Y.S.2d 236 (1966) (providing an excessive amount of alcohol to a 15-year old boy was endangering the welfare of a child). *People v. Fogler*, 184 A.D.2d 270, 585 N.Y.S.2d 26 (1992) (holding a young boy by the collar, producing a knife, holding it about a foot away from the boy's chest and threatening him, was endangering); *People v. Jacobsen*, 255 A.D.2d 951 (4th Dept. 1998) (bringing infant along in the car during an attempted burglary constituted endangering the welfare of a child). A person may also be found guilty of endangering the welfare of a child as a consequence of illegal sexual contact with the child. *See, e.g., People v. Baley*, 252 A.D.2d 815, 675 N.Y.S.2d 706 (3d Dept. 1998).

Based on the foregoing, the mere fact that Mr. Falso pled guilty to Endangering the Welfare of a Child under Penal Law Section 260.10(1) does not, in and of itself, provide the necessary predicate for the imposition of a statutory mandatory minimum sentence. There is nothing in said crime which permits a court to conclude as a matter of law that Mr. Falso had been convicted of a crime "relating to the sexual exploitation of children" or for a crime "relating to sexual abuse or abusive sexual conduct with a minor. . . ."

Importantly, *Shepard* holds that a court may not "look behind" the crime of conviction to such documents as police reports, criminal complaints, or affidavits of witnesses to further define the crime based on the underlying conduct. With regard to Mr. Falso's prior conviction, the Homer Town Court is not a court of record and therefore there is no transcript of Mr. Falso's plea allocution. Moreover, in entering a plea of guilty, Mr. Falso need not have admitted that he had engaged in the conduct of which he was accused. For

27

example, Mr. Falso could have denied that he had sexual contact with the minor but admitted that he had nonetheless engaged in conduct that endangered the welfare of the child.

**2.  THE ALLEGED UNDERLYING CONDUCT FOR THE STATE CONVICTION DOES NOT SUPPORT AN ENHANCED SENTENCE UNDER SECTION 2251(e).**

Section 2251(e) requires that the prior conviction be one "under this chapter" or "under the laws of any State relating to the sexual exploitation of children. . . ."  See 18 U.S.C. § 2251(e).  When referring to crimes "under this chapter," Congress expressly referred to Chapter 110, entitled "Sexual Exploitation and Other Abuse of Children." Presumably, a conviction under State law for a crime "relating to the sexual exploitation of children" must be substantially identical to the crimes enumerated in Chapter 110.  A review of the crimes enumerated in Chapter 110 reveals that they are different from the underlying conduct described in the criminal complaint for the charge of Endangering the Welfare of a Child to which Mr. Falso pled guilty.

For example, Section 2251, entitled "Sexual Exploitation of Children" deals with the photographing a minor engaged in sexually explicit conduct.  Section 2251A deals with the "selling or buying of children."   Sections 2252 and Section 2252A deal with child pornography.  Section 2260 deals with photographs taken of a minor engaged in sexually explicit conduct which are thereafter imported into the United States.  In sum, the crimes enumerated under Chapter 110 deal, in one way or another, with child pornography or the buying or selling of children.

In regard to Mr. Falso's prior conviction, he was allegedly accused of improperly touching the vagina of a minor female.  Such conduct would not be included in the crimes

28

enumerated in Chapter 110.  Therefore, even if the Government could rely on the alleged underlying conduct involved in the prior conviction, such underlying conduct would not supply the necessary predicate for an enhanced sentence under Section 2251(e).

### 3.  NEW YORK LAW HAS SPECIFICALLY IDENTIFIED CRIMES RELATING TO SEXUAL EXPLOITATION OF CHILDREN, SEXUAL ABUSE AND SEXUAL ABUSE OF A MINOR, AND MR FALSO DID NOT PLEAD GUILTY TO THOSE CRIMES.

New York has very specific crimes that relate to sexual exploitation of children, sexual abuse and sexual abuse of a minor.  In regard to child pornography, New York criminalizes such conduct under Article 263 of the New York Penal Law, Titled "Sexual Performance By A Child."  For example, Section 263.16, entitled "Possessing a Sexual Performance by a Child," makes it a crime for a person to possess "a sexual performance by a child when, knowing the character and content thereof, he knowingly has in his possession or control any performance which includes sexual conduct by a child less than 16 years of age."  Said statute criminalizes the possession of child pornography.  *See, People v. Gilmour*, 177 Misc.2d 250, 678 N.Y.S.2d 436 (1998).  Similarly, New York criminalizes the production of child pornography in Section 263.15, which states that a person is guilty of "Promoting a Sexual Performance by a Child" when the person "produces, directs or promotes any performance which includes sexual conduct by a child less than 16 years of age."  *See, People v. Ferber*, 57 N.Y.2d 256 (1982).

The New York Legislature criminalized conduct pertaining to sexual abuse in Article 130 of the New York Penal Law.  For example, Sections 130.55-65 describe the crime of Sexual Abuse.  Likewise, Sections 130.75-80 deal with the crime of Course of Sexual Conduct Against a Child.  For example, Sexual Abuse in the First Degree is defined as a

29

person who has sexual contact with a person who is less than 11 years old.  A person is guilty of Sexual Abuse in the Second Degree when they have had sexual contact with a minor who is less than 14 years old.

The crime of Endangering the Welfare of a Child is not contained in the foregoing articles of the New York Penal Law pertaining to sexual exploitation of children, sexual abuse or abusive sexual conduct involving a minor.  Based on the foregoing, Mr. Falso was not convicted of the crimes delineated by New York State relating to sexual exploitation of children, sexual abuse or sexual abuse with a minor.  As such, the enhancements may not be applied to any sentence based on Mr. Falso's prior conviction for Endangering the Welfare of a Child.

## **CONCLUSION**

Based on the foregoing, the evidence described above should be suppressed and the Indictment should be dismissed.

Dated: January 3, 2006
     Binghamton, New York

Respectfully submitted by:


"s/Thomas A. Saitta"
THOMAS A. SAITTA, ESQ.
Federal Bar Roll Number 102510
Attorney for Defendant, David Falso
46 Front Street
Binghamton, New York 13905
(607) 722-3495
