## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA**

**V.**

**DAVID FALSO,**

**3: 05 -CR -270**

**[TJM]**

**DEFENDANT.**

## GOVERNMENT'S RESPONSE TO DEFENDANT'S OMNIBUS TRIAL MOTIONS

**Introduction:**

The United States of America, represented by Assistant U.S. Attorney Miroslav Lovric, respectfully responds to the omnibus trial motions filed by defendant David Falso.

The government herein responds to a variety of motions made by Falso. Unless specifically consented to, the government opposes defendant's motions and relief sought in all respects. Defendant, in his motions, sets forth a variety of facts and allegations. Where appropriate and of consequence, the government specifically responds to such but we may not address every single statement or fact. Unless specifically adopted in this response, the government disputes defendant's allegations and facts.

**Defense Motions:**

Defendant Falso moves to suppress oral statements made by him to the FBI and also to suppress all evidence seized pursuant to a search warrant executed at his home. He also moves to dismiss counts 3-10 and 11-242. Falso also argues that his prior New York State conviction for

1

Endangering the Welfare of a Minor should not qualify as a prior conviction for purposes of enhancing and increasing his statutory mandatory minimum and statutory maximum penalty. The government opposes all of Falso's motions in their entirety.

Defendant Falso does not move to dismiss counts 1 and 2,  and the Forfeiture Allegation. He has therefore waived any arguments to dismiss these counts. We therefore do not address these counts in our response.

**Pre-trial Hearings:**

### Suppression of Statements Hearing:

As discussed below, we hereby consent to a pre-trial hearing being held as to the issue of oral statements made by Falso to the FBI during a voluntary interview conducted at Falso's home on the date of the execution of the search warrant at his home (hearing as to suppression of defendant's statements). As discussed in detail below, the oral statements made by Falso to the FBI were voluntarily made by Falso. Falso was not in custody and he was not under arrest at the time that he knowingly and voluntarily agreed to speak with the FBI in his own home. Therefore, the statements made by Falso to the FBI were lawfully obtained and the procedure utilized in this situation and under these circumstances did not violate defendant's 5th Amendment rights under the U.S. Constitution. Defendant's motion to suppress the statements should be denied. At the hearing, the proof will demonstrate that defendant's oral statements were lawfully, voluntarily and constitutionally obtained.

### Franks Hearing:

As also discussed below, we object to a <u>Franks</u> hearing being held as to the issue of suppression of the search warrant. It is not warranted and defendant has failed to meet his legal

2

burden to demonstrate as such.  As further discussed below, it is our position that the search warrant had ample probable cause for issuance of the warrant by this Court and therefore Falso's motion to suppress the evidence should be denied on its face and on the four corners of the affidavit. Furthermore, the government vehemently denies and takes considerable exception to the defense allegations that the FBI agent provided misleading facts and arguments to this Court in the affidavit supporting the search warrant application.  The government's position is that Falso's allegations against the FBI are nothing short of a smear campaign against an FBI agent in order for Falso to argue that therefore a <u>Franks</u> hearing is necessary and thereafter to also argue that the good-faith exception to warrants does not apply in this case.  We find Falso's tactic reprehensible.  It is our position that this Court can and should decide the search warrant suppression issue on the "four corners" of the search warrant application and affidavit and deny Falso's motion to conduct a <u>Franks</u> hearing.  There was absolutely nothing misleading in the FBI agent's affidavit.  The information provided to this Court was accurate and truthful.  It is Falso's accusations and allegations that are misleading and contorted.

## PROCEDURAL AND FACTUAL BACKGROUND OF THE CASE

On June 1, 2005, FBI Special Agent James T. Lyons, Jr. applied for a search warrant before the Honorable Thomas J. McAvoy, Senior U.S. District Court Judge.  Agent Lyons presented this Court with an application, affidavit and proposed search warrant (attached as **Exhibit 1**).  This Court reviewed the documentation and this Court then authorized and endorsed the search warrant.  The search warrant authorized the FBI to search Falso's residence and seize materials related to the receipt, shipment and possession of child pornography.  The FBI served the search warrant on June 8, 2005 at approximately 10:12 AM.  As of the date and time that the FBI served the search warrant,

there was no charging instrument of any kind pending against Falso in connection to this matter. There was no indictment, information or complaint filed. Furthermore, as of the date and time that the FBI served the search warrant, there was no arrest warrant issued as to defendant Falso.

The FBI executed the search warrant on June 8, 2005. At the time of the search warrant being executed, there was no intention and no plan whatsoever for the FBI to arrest any person at the Falso residence. No arrest warrants had been sought or issued. The FBI's sole intention and plan was to execute the search warrant; search for the types of materials that the warrant specified; and to seize the types of materials authorized to be seized. The FBI did not even know whether any person would even be present at the residence when FBI agents headed out to Cortland, New York that morning to conduct their search.

Upon arriving at Falso's residence at about 10:12 AM, the FBI found Falso present at his home. They announced their identity; provided him with a copy of the search warrant; and politely explained to Falso what they would be doing to execute the search warrant. Falso was NOT under arrest. Falso was NOT in custody. Falso was NOT told that he could not leave the premises. Falso was NOT ordered to do anything. As FBI agents commenced to perform their search warrant duties, FBI agent Lyons asked Falso if he would be willing to talk with agent Lyons. Falso indicated that he would. Agent Lyons and Falso then sat down in a quiet area within Falso's home and they talked. FBI agent Lyons and Falso had a conversation inside Falso's home (attached as **Exhibit 2** is the FBI 302 memorializing the interview of Falso). Falso was NOT handcuffed or restrained in any manner during their conversation. Falso was not in custody; not under arrest; and he was not being ordered to do anything during any part of his conversation with FBI agent Lyons. At no time did Falso indicate that he did not want to continue his conversation with agent Lyons or that he wanted to leave

the premises.

FBI agents conducted and completed their search and collected the items which are listed on the search warrant return. After the interview with Falso had been completed and after the search had been conducted, the FBI telephonically contacted the U.S. Attorney's Office and described all that had transpired at the Falso residence. At some point after that telephone contact, defendant Falso was placed under arrest and taken into custody. Only after Falso was placed under arrest and later that day after he was transported to the federal building in Binghamton, a federal felony complaint was drafted by the U.S. Attorney's Office and filed with the court later that day charging Falso with receiving and possessing child pornography. Falso had his initial appearance on the complaint before U.S. Magistrate Judge David E. Peebles later that same day.

Property seized from inside Falso's home included more than 600 images of child pornography printed out on 81/2 by 11 sheets of paper; dozens of photographs taken oversees in Asian and Far East countries showing young girls and in some photographs minors; photographs of young girls and Falso; photographs showing Falso and minors in sexually explicit depictions and which constitutes child pornography; several DVD/CDs containing hard core child pornography videos; a computer containing a tremendous library of child pornography; a book entitled "Thailand-Lonely Planet Travel Survival"; four (4) U.S. Passports in Falso's name showing extensive foreign travel by David Falso to numerous countries in Asia, the Far East and South America; handwritten log of sexual activity; a federal express packet containing printouts from online message boards; a priority mail envelope containing e-mail printouts; and other items.

On June 16, 2005, a federal grand jury handed up an indictment charging Falso with 242 felony counts and a forfeiture allegation (attached as **Exhibit 3** is a copy of the indictment).

## MOTION TO SUPPRESS STATEMENTS MADE BY FALSO TO THE FBI

The government hereby consents to a pre-trial hearing being held before trial as to the issue of oral statements made by Falso to the FBI during a non-custodial, non-arrest, voluntary interview conducted at Falso's home on the date of the execution of the search warrant. The oral statements made by Falso to the FBI were voluntarily made by Falso in a non-custodial setting. At the time of the voluntary interview, Falso was not in custody and he was not under arrest at the time that he knowingly and voluntarily agreed to speak with the FBI in the comfort of his own home. At no time during the duration or pendency of the interview was Falso in custody or under arrest. The FBI had no intention and no plan whatsoever to arrest Falso or any other person for that matter when they arrived at the residence to execute the search warrant. In fact, prior to June 8, 2005, they had no idea whether anyone would even be present at the residence when they went there to conduct their search. There was no charging instrument on file against anyone in connection to this investigation. They had not sought or obtained arrest warrants for anyone. This matter was merely an investigation in the early stages. Miranda does not apply to non-custodial interviews. Therefore, the voluntary statements made by Falso to the FBI in a non-custodial setting were lawfully obtained and the procedure utilized in this situation and under these specific circumstances did not violate defendant's 5th Amendment rights under the U.S. Constitution. Defendant's motion to suppress the statements should therefore be denied. At the hearing, all the proof and the specific facts in this event will demonstrate that defendant's oral statements were lawfully, voluntarily and constitutionally obtained in a non-custodial setting.

## MOTION TO DISMISS COUNTS 3-10

Counts 3-10 charge Falso with Production of Child Pornography pursuant to Title 18, USC,

6

section 2251(a).   The evidence and proof demonstrates that Falso, a United States citizen, specifically traveled from his home in Cortland, New York, in the Norther District of New York, to foreign countries for the specific purpose of engaging in sexual acts with minors and to memorialize his despicable and predatory acts by photographing some of those minors in some of those acts.   The evidence also demonstrates that Falso produced those child pornography photographs with the intent to then transport those child pornography photographs to the United States and to Cortland, New York in this district, where he then kept the photographs, like trophies, in a box in his bedroom closet in order to re-live and enjoy over and over his foreign sex acts with minors.   The evidence also demonstrates that Falso used his home in Cortland, New York, in the Northern District of New York, as a staging area, home base and prep location to plan, finance and execute his foreign travels to engage minors in sex and record his actions via photography.   The evidence further demonstrates that Falso formed the intent to commit these crimes, as charged in counts 3-10, while in his home in Corland, New York; that he used his Cortland residence to plan, finance and map out these trips; that he used his computer at his Cortland home to assist the planning phases; and utilized his Cortland residence to store these photographs and intentionally transported back to this district these photographs as his trophies of his conquests.

In his motion, Falso claims that he was on vacation in these foreign lands when these sexual encounters just happened to occur.   Falso also claims and argues that photographing the acts were merely incidental to the sex acts with minors (at page 13 of notice of motion/motion).   Falso's contentions are without merit and simply not true.  He planned and financed his foreign travels from Cortland, New York specifically to have sex with minors overseas and to produce photographs to bring back home to preserve and re-live his predatory sex acts.   There was nothing incidental about

7

his taking pictures and he certainly did not travel overseas and sexual encounters with minors just happened to occur each time he traveled abroad. Falso's intentions and intent were formulated in Cortland, New York. He planned, mapped out and financed these sex trips from his residence in Cortland, New York. He snapped the child pornography photographs in the foreign countries specifically in order to bring them back to his residence and keep them like trophies to view and re-live his acts in the privacy of his home.

Defendant Falso moves to dismiss counts 3-10 on two grounds. First, Falso argues that section 2251(a) does not apply to extraterritorial acts and conduct committed in foreign countries. Second, Falso argues that counts 3-10 should be dismissed because the photographs were taken at a time outside the applicable statute of limitations. Defendant is wrong on both theories and his motions should be denied.

**Statute of Limitations Argument:**

First, contrary to defendant Falso's allegations, counts 3-10 do not charge conduct that occurred outside the applicable five year statute of limitations. The evidence and proof at trial will demonstrate that the 8 photographs charged in these counts were taken and thereby produced in and around the year 2001. In fact, two of the eight photographs are dated with the date of September 10, 2001 on the back of both photographs. The date represents the date that the photographs were developed at CVS, which is also stamped on the back of those two photographs. This evidence along with other evidence that will be produced at trial of defendant's travel itineraries, passport stamped dates and other information and evidence will establish that these 8 photographs were in fact produced within the statute of limitations period. The indictment was handed up in June of 2005 and the photographs were produced in and about 2001. Defendant's motion is therefore meritless.

8

**Extraterritorial Argument:**

Falso argues that counts 3-10 must be dismissed because Title 18, USC, section 2251(a) does not apply because the photographs were taken in a foreign country. Defendant is wrong.

The United States Court of Appeals, Ninth Circuit, was presented with this exact same question of law in United States v. Thomas, 893 F.2d 1066 (9th Cir. 1990); cert. denied, Thomas v. U.S., 498 U.S. 826 (1990). In Thomas, defendant made this very argument that section 2251(a) does not apply to a United States citizen who snaps or takes the child pornography photographs in a foreign country and then transports them to the United States. The defendant in Thomas argued that because the photographs were taken in Mexico and then transported to the United States, section 2251(a) cannot be applied to him. Id, at 1068. The Thomas circuit court flatly rejected defendant's argument and it concluded that section 2251(a) applied to extraterritorial conduct by United States citizens in cases where the child pornography photographs were snapped or taken by a United States citizen who traveled abroad, snapped the child pornography photographs abroad, and then transported them back into the United States. Thomas, at 1068-1070. It is noteworthy that the United States Supreme Court denied certiorari at Thomas v. U.S., 498 U.S. 826 (1990).

The Commerce Clause grants Congress the powers to enact a statute such as 2251(a) with extraterritorial reach. Congress can and very often does apply its statutes to extraterritorial acts and conduct, especially when it comes to United States citizens, unless of course such application would violate due process. Thomas, at 1068. Even though section 2251(a) does not explicitly state that it applies to conduct outside the United States, the exercise of extraterritorial power may be inferred and very often is inferred from the nature of the offense and Congress' efforts to eliminate the types of crimes that the statute involves. Thomas, at 1068. See also, United States v. Baker, 609 F.2d 134,

9

136 (5th. Cir. 1980), where the <u>Baker</u> court analyzed Title 21, USC, section 841(a)(1), possession with intent to distribute, and it concluded that even though the explicit language of that statute does not explicitly state that it applies to extraterritorial acts, 841(a)(1) does in fact apply to extraterritorial acts and conduct if the defendant intended to eventually distribute said substances in the United States. <u>Baker</u>, at 137. Falso, like the defendant in <u>Baker</u>, intended to transport back into the United States and did in fact transport the photographs taken overseas for the purpose of possessing those child pornography images in the United States. The <u>Baker</u> court reasoned that the statute, even though silent on its face regarding extraterritorial applicability, did apply to extraterritorial acts committed by a United States citizen because it is a necessary incident to Congress' overall efforts to eradicate all illegal drug trafficking. <u>Baker</u>, at 137.

Like the federal drug trafficking statutes and Congress' intention to apply Title 21 to extraterritorial acts even though not explicitly containing extraterritorial language, Congress created a comprehensive statutory scheme to eradicate sexual exploitation of children in sections 2241-2257 of Title 18. Congress clearly intended, on a wide scale, to eradicate child pornography conduct encompassing the possession, transportation, mailing, production, receipt, and distribution both inside and outside the United States, which affects either foreign commerce or interstate commerce. Title 18, USC, section 2251(a) applies to extraterritorial acts committed by United States citizens where the child pornography photographs which were snapped in a foreign country and were brought back into the United States by the United States citizen. <u>United States v. Harvey</u>, 2 F.3d 1318, (3rd. Cir. 1993). In <u>Harvey</u>, the defendant traveled abroad to the Philippines; engaged minors in sexual acts; photographed such acts; and then caused the photographs to be transported into the United States where defendant possessed them. <u>Harvey</u>, at 1318-1329. In <u>Harvey</u>, the Third Circuit Court

of Appeals concluded that section 2251(a) applies to extraterritorial acts and conduct committed by a defendant who caused the photographs to be snapped in a foreign country and then to be transported into the United States for defendant's possession within the United States. The <u>Harvey</u> court approvingly cites and references the Ninth Circuit court decision <u>United States v. Thomas</u>, 893 F.2d 1066 (9th Cir. 1990); <u>cert. denied</u>, <u>Thomas v. U.S.</u>, 498 U.S. 826 (1990). Although the <u>Harvey</u> court dealt with the issue of whether section 2G2.4(c)(1) of the federal sentencing guidelines can be applied to defendant's guidelines scoring and conduct, in order to decide and reach that issue, the Third Circuit Court of Appeals first decided the issue of whether 2251(a) was intended by Congress to apply to extraterritorial conduct. Not only does the <u>Harvey</u> court conclude that extraterritorial application of 2251(a) can be inferred to that statute from the nature of the offense/statute, statutory interpretation and Congressional records, the <u>Harvey</u> court very thoroughly and meticulously discusses its rational and conclusions. See, <u>Harvey</u>, at 1327-1331.

Contrary to Falso's arguments as presented in his motions, the Third Circuit Court of Appeals in <u>Harvey</u> meticulously outlined how it is that section 2251(a) does in fact have extraterritorial application in cases like Falso's based upon Congress' intent and the Congressional record at S.Rep. No. 95-438, 95th Congress, 2d Session 10, reprinted in 1978 U.S.C.C.A.N. 40, 47; statutory interpretation of the intent of the child exploitation network of statutes including 2251(a); and the nature of the offenses governed by section 2251(a). <u>Harvey</u>, at 1327-1331.

Like the <u>Thomas</u>, <u>Baker</u>, and <u>Harvey</u> courts, other courts too have reasoned, concluded and found extraterritorial intent and application in other statutes, similar to section 2251(a),where the statute itself did not contain explicit language of extraterritorial application and is in fact silent. In <u>United States v. Bredimus</u>, 234 F.Supp.2d 639 (N.D. Texas, July 19, 2002), the district court denied

defendant's motion to dismiss the indictment and it determined that Congress intended section 2251A (the buying and selling of children statute) to be given extraterritorial application, even though the statute is silent on the issue, based upon the nature of the offense proscribed by that statute and Congress' other legislative efforts to eliminate the sexual exploitation of children, including child pornography. Bredimus, at 639-651. The rational employed by the Bredimus court is identical to the reasoning and rational of the other courts cited above. It is noteworthy that statutes 2251(a) and 2251A were enacted and developed as part of the same congressional effort, legislative scheme and intent to address and eradicate child pornography and child exploitation in foreign commerce and interstate commerce.[1]

On April 30, 2003, Congress enacted section 2251(c)(1) to Title 18. Section 2251(c)(1) in fact expanded the extensive powers and reach already present and contained in the overall section 2251, as well as 2251(a). In examining the Congressional record and intent in the passage of 2251(c)(1), there is further evidence that 2251(a) in fact has extraterritorial application and was intended as such and that the Thomas, Baker, and Harvey courts correctly determined Congressional extraterritorial intent as to 2251(a). The recently enacted section 2251(c)(1) clearly indicates that Congress, as of April 30, 2003, now wants and intends the overall statute pursuant to Title 18, USC, section 2251 to apply and to reach "foreign producers", "foreign citizens", and "foreign nationals" who violate 2251 to be subject to prosecution regardless as to whether they ever set foot in the United States, so long as their productions do so or are intended to do so. Section 2251(c)(1) allows prosecution of foreign producers, foreign citizens and foreign nationals who produce child

---

[1] See also, United States v. Kim, 246 F.3d 186, (2d Cir. 2001), where the Second Circuit Court of Appeals inferred extraterritorial application to the wire fraud statute (18 USC 1343) and conduct committed by a United States citizen while in a foreign country.

pornography in foreign countries and never set foot in the United States but their productions and the fruits of their labor do in fact come to the United States or are intended to do so. See, the Congressional record at H.R. Conf. Rep. 108-66, section 506, at pages 142-161, April 9, 2003. In enacting this newer legislation at 2251(c)(1), the congressional record specifically cites with favor and approval the Ninth Circuit Court of Appeals case of United States v. Thomas, 893 F.2d 1066 (9th Cir. 1990). See, H.R. Conf. Rep. 108-66, section 506, at pages 142-161, April 9, 2003, at Footnote 11. The citation to Thomas, demonstrates that Congress in enacting section 2251(c)(1) wanted to reach foreign nationals and foreign producers in foreign countries who may not ever step foot into the United States, just like U.S. citizens, who happen to travel to foreign countries, were already subject to federal prosecution pursuant to 2251(a) and as demonstrated and explained by the Thomas court. See, H.R. Conf. Rep. 108-66, section 506, at pages 142-161, April 9, 2003, at Footnote 11.

Finally, regardless as to the interpretation of extraterritorial jurisdiction, defendant Falso's prosecution pursuant to section 2251(a) is independently authorized and permissible pursuant to the doctrine of "continuing offense". Title 18, USC, section 3237(a); see also, United States v. Moncini, 882 F.2d 401 (9th Cir. 1989). Pursuant to section 3237(a), any federal offense involving the transportation in interstate or foreign commerce or the importation of any object into the United States is a continuing offense that may be prosecuted in any district through which that object moves. Title 18, USC, section 3237(a), emphasis added; see also, United States v. Barfield, 969 F.2d 1554 (4th Cir. 1992). Section 2251(a) is an offense that involves the transportation in interstate or foreign commerce or the importation of any object into the United States, namely, the child pornography images/photographs (see also the language of counts 3-10 of the indictment). In Falso's case, the

13

objects are the 8 child pornography photographs taken in foreign countries and then transported by Falso into the Northern District of New York within the United States.  Under the particular facts and proof as they pertain to Falso, Falso may be prosecuted pursuant to 2251(a) as a result of forming the intent while in the Northern District of New York; commencing the offense while in Cortland, New York, in the Northern District of New York; and then completing the offense in the Northern District of New York by transporting the 8 child pornography photographs through both foreign and interstate commerce and finally into the Northern District of New York, specifically into Cortland, New York.  Falso formed the intent to commit the acts prohibited by 2251(a) while in Cortland, New York.  He used his residence and his computer as a staging area to plan, map out and finance his trips overseas for the purpose of engaging minors in sex overseas and the taking of pictures of the sexual encounters with minors in foreign countries.  When Falso set out to accomplish his sexual encounters, he started his journey from Cortland, New York.  Not only was the intent element of this violation formed in the Northern District of New York and the planning of his overseas trip conducted in the Norther District of New York, but he then transported through both foreign commerce and interstate commerce and into the Northern District of New York, Cortland New York, the objects of his transportation and importation, the 8 child pornography photographs. Therefore, prosecution of Falso pursuant to 2251(a) is authorized to be prosecuted in the Northern District of New York pursuant to 3237(a), the district through which and into which the 8 child pornography photographs moved and where they were seized at defendant's residence in Cortland, New York.

Falso argues in his motion that the existence of sections 2423 and 2260 somehow means that section 2251(a) cannot possibly apply to his conduct.  Falso is already also charged with section

2423 violations in counts 1 and 2 of the indictment. The fact that a defendant's conduct can, may and often does violate several federal statutes is nothing extraordinary or unique. It is quite common that several federal laws are violated and sometimes charged even when based upon the identical acts or conduct of a defendant. It certainly does not mean or follow that where such occurs all but one of those statutes must be unlawfully charged or in some fashion wrongly charged.

## <u>MOTION TO DISMISS COUNTS 11-233</u>

Counts 11-233 of the indictment charge Falso with knowingly receiving, between July of 2000 and June 8, 2005, child pornography images and material containing child pornography that had been mailed, transported and shipped in interstate and foreign commerce. All of the images charged in counts 11-233, in addition to several hundred more such images, were found in a box in Falso's residence printed on 8 ½ by 11 sheets of paper. All of the images constitute child pornography. All of the images were printed from Falso's computer onto 8 ½ by 11 sheets of paper. All of the images were received and downloaded by Falso from the internet via computer. All of the images contain and have printed on each of them the internet website/webpage from which Falso received, downloaded and printed each respective image via his computer. All of the images contain and have printed on them the date on or about which Falso received, downloaded and printed each respective image via his computer. All of the images were received, downloaded and printed by Falso via his computer from the listed website/webpage well within the five year statute of limitations, as demonstrated by each date on each image.

Defendant Falso moves to dismiss counts 11-233 on essentially two grounds. First, Falso argues a statute of limitations violation. Second, Falso contends that all the counts must be dismissed pursuant to <u>Ashcroft v. Free Speech Coalition</u>, 535 U.S. 234 (2002). Defendant Falso is

wrong.

**Statute of Limitations Argument:**

Falso is wrong. There is no statute of limitations violation. Falso simply does not understand the evidence and the proof. Each child pornography image charged in counts 11-233 has a date and the website/webpage printed along with the image on the sheet of paper. That date is in fact the date on or about which Falso received, downloaded and printed that particular image from that particular webpage using his computer. The evidence at trial will so demonstrate. The indictment was handed up on June 16, 2005. All of the images in these counts are dated well after July of 2000 and thereafter. Therefore, the charges are well within the five year statute of limitations.

**Ashcroft v. Free Speech Coalition Argument:**

Defendant next argues that counts 11-233 must be dismissed pursuant to Ashcroft. Falso is wrong. In our view, Falso misses the point, meaning and application of Ashcroft. Contrary to defendant's arguments, the U.S. Supreme Court in Ashcroft did not overturn any of the substantive child exploitation/child pornography statutes at all, rather, the court struck as unconstitutional two of the four definitions in section 2256(8) of what constitutes "child pornography" as defined in section 2256(8) of Title 18. Section 2256 is entitled the "Definitions Chapter" and contains various definitions of terms used throughout the various child exploitation/pornography statutes including the definition of "child pornography" at 2256(8). Therefore, the child exploitation/pornography statutes whether they be 2252A, 2251, 2252, etc., and whether before OR after the Ashcroft decision are still valid and constitutional statutes. What is not valid and not permissible is the use of those definitions of "child pornography" which were invalidated per Ashcroft. In essence, Ashcroft invalidated the definitions which allowed child pornography to be defined and found "as appearing

16

to be minors or computer graphics making it appear as if it is a minor, etc". The impermissible definition of minors, pursuant to Ashcroft, have come to be known as "the virtual minor or virtual child pornography images". Thus, in charging a child exploitation/pornography statute, whether before OR after Ashcroft, the government may not rely upon or argue that the "child pornography" definition can be met by proving that the image shows a virtual minor or an image that appears to be a minor.

The government in the Falso indictment does NOT rely upon the impermissible and unconstitutional definition of "child pornography" as invalidated by Ashcroft. A careful reading of the Falso indictment in all the pertinent counts, including counts 1-242, clearly demonstrates that the government relies upon and also charged child pornography as being "a minor" depicted in the acts. We have charged and rely upon and will argue to the jury that all the images and photographs depict an actual minor engaged in the sexual acts or depictions. That is why in each count it reads "a minor". The charges do not describe the child pornography or read as "what appears to be a minor", or "what looks like a minor", or "what is indistinguishable from a minor", or "a computer generated image of what appears to be a minor", or "an image modified to look like a minor", etc. We rely upon, have charged and will argue that "a minor" is in fact depicted in each image or photograph. This definition has always been a valid, constitutional and permissible definition pursuant to 2256(8) before AND after Ashcroft. This is the definition that we charged and rely upon. We have not charged nor do we rely upon any impermissible definition as invalidated by Ashcroft, essentially what is called the "virtual minor". After Ashcroft, Congress, in passing the Protect Act of 2003 Pub. L. No. 108-066, 117 Stat. 650, April 30, 2003, did in fact add a couple of additional definitions to section 2256(8) of what also constitutes child pornography (the "indistinguishable from" and

"modified to appear" definitions).  They did so in direct response to the <u>Ashcroft</u> decision.  The government in this indictment has chosen NOT to charge or rely upon these post-<u>Ashcroft</u> <u>Protect</u> <u>Act</u> definitions.  We rely upon the classic and universally court approved definition of child pornography, to wit, "a minor".

In counts 1-242, we have charged and rely upon the child pornography definition that has always and continues today to be a valid, constitutional and permissible definition of child pornography, that is, that the image or photograph in the respective count depicts "a minor".  Falso's entire line of argument is therefore meritless.

## MOTION TO DISMISS COUNTS 234-241 AND 242

In counts 234-241, Falso is charged with transporting child pornography images/pictures through interstate and foreign commerce.  These 8 counts charge Falso with transporting into the United States the pictures taken in foreign countries of minors engaged in sexual acts, some in fact showing Falso also in the picture with the particular minor.  As described above, the evidence at trial will demonstrate that these 8 photographs were taken in and about the year 2001 and then transported by Falso into the United States sometime thereafter and whereupon they were seized from Falso's residence pursuant to the search warrant on June 8, 2005.  In count 242, Falso is charged with the possession of child pornography images and pictures.  Count 242 charges and encompasses all of the hundreds and hundreds of printed images, photographs, images on the computer, images and videos on the DVD/CDs and other materials containing child pornography which were possessed by Falso on June 8, 2005 and all of which were seized from his residence on June 8, 2005.

Falso moves to dismiss counts 234-241 and count 242 based upon the same <u>Ashcroft</u> argument that he makes in the motion to dismiss counts 11-233.  For the exact same reason we

articulated above, Falso's motion is without merit.  Once again, a careful reading of the Falso indictment in counts 234-241 and count 242, clearly demonstrates that the government relies upon and also charged child pornography as being "a minor" depicted in the acts.  We have charged and rely upon and will argue to the jury that all the images and photographs depict an actual minor engaged in the sexual acts or depictions.  That is why in each count it reads "a minor".  The charges do <u>not</u> describe the child pornography or read as "what appears to be a minor", or "what looks like a minor", or "what is indistinguishable from a minor", or "a computer generated image of what appears to be a minor", or "an image modified to look like a minor", etc.  Falso's entire line of argument is therefore meritless.

## STATUTORY ENHANCEMENT RESULTING FROM PRIOR CONVICTION

In the Falso indictment in counts 3-242, the indictment charges <u>Apprendi</u> compliant language in order to put defendant Falso on notice that upon conviction of the respective counts, the government will offer proof to the court (evidence of prior conviction in order to enhance statutory sentence does not need to go before the jury pursuant to <u>Booker;</u> it remains an exception to <u>Booker</u>) proving that defendant has a prior conviction for a type of offense described in the respective statute which therefore increases Falso's statutory mandatory minimum and statutory maximum penalties. Section 2251 (charging counts 3-10) and section 2252A (charging counts 11-233, 234-241 & 242) enhance and increase a defendant's statutory mandatory minimum and maximum sentence if defendant has a qualifying prior conviction, under federal or state law, for an offense relating to the sexual abuse or abusive sexual conduct involving a minor, or the sexual exploitation of children. See, Title 18, USC, sections 2251 and 2252A.  Defendant Falso argues that his prior New York state conviction for Endangering The Welfare Of A Child, pursuant to New York state penal law section

19

260.10(1) does not qualify as an appropriate prior conviction. We disagree and contend that Falso is wrong.

Falso's primary argument is premised upon <u>Shepard v. United States</u>, 125 S.Ct. 1254 (2005). Falso weaves a series of arguments and essentially wants this Court to conclude that <u>Shepard</u> mandates only looking at the "title" of the prior conviction statute and the "elements" of the prior conviction statute in order to determine if it qualifies as the type of prior offense conviction. <u>Shepard</u> does not say that and it does not stand for that. Falso also argues that the government relies upon police reports and other documents and records which the <u>Shepard</u> court explicitly stated could not be relied upon to determine if the prior conviction offense qualifies as the type of offense that the current federal statute uses to enhance penalties. Simply put, we do not rely on any such <u>Shepard</u> impermissible documents to establish that Falso's conviction is a qualifying state offense.

In order to prove that Falso's prior conviction for Endangering The Welfare Of A Child, pursuant to New York state penal law section 260.10(1), qualifies as a type of prior conviction pursuant to sections 2251 and 2252A, the government relies upon the state statute <u>AND</u> the "charging document" to which Falso pleaded guilty (attached as **Exhibit 4** is the two page "charging document" to which Falso pleaded guilty in state court. The "charging document" in the state court proceeding is a two page document labeled Information with an attached Supporting Deposition.). In its holding, <u>Shepard</u> stated that the inquiry is "limited to the terms of the <u>charging document</u>, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." <u>Shepard</u>, at 1263 (<u>emphasis added</u>). Pursuant to <u>Shepard</u> we hereby do in fact rely upon the "charging document" to which Falso admitted his complete guilt and to which he pleaded

20

guilty. "A district court does not violate a defendant's constitutional rights by looking beyond the state statute of conviction, so long as the district court limits itself to the documents outlined in Shepard". United States v. Stevens, 2005 WL 3367059 (10th Cir. December 12, 2005). "Shepard allows a court to look at the 'terms of the charging document...'" Id.; see also, United States v. McCutchen, 419 F.3d 1122 (10th Cir. August 17, 2005).

The "charging document" relating to Falso's state plea and conviction is an Information, as specified in the top right corner of page one, and it includes the attached page two Supporting Deposition, from the victim 7 year old child, which is a part of page one as is referenced about half way down on page one (see **Exhibit 4**). This two page "charging document" is the charging instrument or Information to which Falso pleaded guilty in state court; admitted his conduct; and which constitutes his prior state conviction. This two page charging document, that is the two page Information, is a judicial record in that this document was filed with the state court and it is the document on file with that state court and as to which Falso pleaded guilty in state court (no different than an Information filed in federal court where a defendant pleads guilty to an Information rather than an indictment). The charging document sets forth the statutory language of the Endangering the Welfare of a Child statute and then it also states: "To Wit: that during the months of January or February 1986, the above mentioned defendant did subject a female child less than seventeen years of age to sexual contact, said sexual contact likely to be injurious to the moral welfare of said child, (omit child's name for privacy reasons), age 7, (omit DOB), all contrary and in direct violation to the above mentioned section of law". On page two of this "charging document", the Information, it continues with the 7 year old child victim explicitly describing how Falso put his hand down the child's pants; then down her underpants; rubbed her private parts; and how it "hurt a little bit" when

21

Falso performed this act upon the 7 year old child.

The government relies upon this "charging document" to establish that Falso's prior state conviction is in fact a conviction for an offense relating to the sexual abuse or abusive sexual conduct involving a minor, or the sexual exploitation of a child. In doing so, we are compliant with Shephard. It is clear from a common sense and plain reading of sections 2251 and 2252A that Congress did not intend to limit the types of qualifying prior offenses of conviction by merely looking at the prior statute's name or title, or merely examining its statutory elements. Quite the contrary, the intent was very broad and far reaching. Congress intended to reach prior convictions for offenses and conduct having anything to do with the sexual abuse or child exploitation of minors.

Falso's remaining arguments are unpersuasive and contrary to the plain reading of sections 2251 and 2252A, as well as the intentions of Congress. Falso's motion is therefore without merit.

## MOTION TO SUPPRESS PHYSICAL EVIDENCE SEIZED BY SEARCH WARRANT

Defendant Falso moves to suppress all physical evidence seized by law enforcement in this investigation pursuant to the federal search warrant reviewed and issued by the Honorable Thomas J. McAvoy, Senior U.S. District Court Judge **(Exhibit 1)**. The government opposes defendant's motion in all respects and we contend that all the physical evidence was lawfully and legally seized in conformity to the 4th. Amendment of the U.S. Constitution. Moreover, we oppose a suppression hearing and we oppose a Franks hearing. We urge this Court to deny defendant's motion on its face. There is no basis to hold a Franks hearing based upon defendant's meritless allegations.

It is our position that the search warrant had ample probable cause for issuance of the warrant by this Court and therefore Falso's motion to suppress the evidence should be denied on its face and on the four corners of the affidavit. Furthermore, the government vehemently denies and takes

22

considerable exception to the defense allegations that the FBI agent provided misleading facts and arguments to this Court in the affidavit supporting the search warrant application. The government's position is that Falso's allegations against the FBI are nothing short of a smear campaign against an FBI agent in order for Falso to argue that therefore a <u>Franks</u> hearing is necessary and thereafter to attempt to argue that therefore good-faith exception to warrants does not apply in this case. We find Falso's tactic reprehensible. It is our position that this Court can and should decide the search warrant suppression issue on the "four corners" of the search warrant application and affidavit and deny Falso's motion to conduct a <u>Franks</u> hearing. There was absolutely nothing misleading in the FBI agent's affidavit. The information provided to this Court was accurate and truthful. It is Falso's accusations and allegations that are misleading and contorted.

### **Probable Cause In The Search Warrant:**

A motion to suppress evidence seized pursuant to court authorized search warrants calls for this Court to review "the four corners" of the application, affidavit and attachments which were reviewed by the issuing court at the time of the search warrant application. No further hearing is warranted or necessary because the only relevant issue is whether all the information supplied to the issuing court supports a finding of probable cause by the issuing court. That only requires an examination by this Court of the application and affidavit and any attachments to the search warrants. The government submits that there was probable cause in the application, affidavit and attachments justifying the issuance of the search warrants in this case.

Probable cause is a "fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules." <u>Illinois v. Gates</u>, 462 U.S. 213, 232, 103 S.Ct. 2317 (1983). Whether probable cause exists is merely a common sense

decision relying upon the facts and circumstances set forth in the affidavit before the issuing Court.

> Courts should not invalidate [a] warrant by interpreting the (supporting) affidavit in a hypertechnical, rather than a **common sense**, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. Jones v. United States , 362 U.S. 257, 270, 80 S.Ct. 725 (1960). **[emphasis added]**.

The Second Circuit has long recognized the presumption that the authorizing judge will scrutinize any application and will scrupulously impose the restrictions required by statute. United States v. Masciarelli, 558 F.2d 1064, 1068 (2d Cir. 1977), citing United States v. Tortorello, 480 F.2d 764, 783 (2d Cir. 1973), cert. denied, 414 U.S. 886 (1973). Subsequently, the issuing Court's determination of probable cause is afforded great deference by reviewing courts and any doubts should be resolved in favor of upholding the warrant. Illinois v. Gates, 462 U.S. at 236; United States v. Vasquez, 634 F.2d 41, 45 (2d Cir. 1980); Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 590 (1969); Smith, supra, at 1012. Even in doubtful or marginal cases, resolution of the probable cause issue should be determined largely by preference for warrants. See, for example, Massachusetts v. Upton, 466 U.S. 727, 734 (1984)(per curiam). Additionally, there is a presumption of validity with respect to the affidavit supporting a search warrant. Franks v. Delaware, 438 U.S. 154, 171 (1978).

Appellate courts may not subject a issuing Court's determination as to probable cause to de novo review. Gates, 462 at 236. In order for a defendant to prevail on a motion to suppress a search warrrant for lack of probable cause, the defendant must demonstrate that the issuing Court did not have a "substantial basis" for finding probable cause to successfully prevail in this motion. Jones

v. United States, 362 U.S. 257, 271 (1960).

Accordingly, this Court must determine whether, given the "totality of the circumstances," the issuing Court had probable cause to issue the search warrants here. As the Supreme Court has made plain, probable cause is a practical, non-technical concept.

> In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

See Illinois v. Gates, 462 U.S. at 231. Probable cause does NOT require a prima facie showing. Gates, 462 at 235. The inquiry turns upon an assessment of probabilities and logical inferences which may be drawn, not on proof of specific criminal conduct beyond a reasonable doubt or even by a preponderance of the evidence. Gates, 462 at 235. "Simply put, probable cause is a 'relaxed standard'." United States v. Martin, 426 F.3d 68, at 76 2005 WL 2482386 (2d Cir. 2005), quoting, United States v. Leon, 468 U.S. 897, 958 (1984).

To encourage the obtaining of search warrants by law enforcement officials, common sense, not stringent or hyper technical standards, is to be used in determining probable cause. See, United States v. Martin, 426 F.3d 68, 2005 WL 2482386 (2d Cir. 2005); United States v. Ventresca, 380 U.S. 102, 108 (1965); United States v. Lloyd, 71 F.3d 1256 (7th Cir. 1995); United States v. Sumpter, 669 F.2d 1215, 1218 (8th Cir. 1982); United States v. Seta, 669 F.2d 400, 402 (6th Cir. 1982); United States v. Williams, 605 F.2d 495 (10th Cir), cert. denied, 444 U.S. 932 (1979); United States v. Middleton, 599 F.2d 1349 (5th Cir. 1979). Furthermore, the Supreme Court has stated that a reviewing court should pay substantial deference to the court that made the probable cause finding and issued the warrant. Aguilar v. Texas, 378 U.S. 108, 111 (1964); United States v. Allen, 588 F.2d

25

1100 (5th Cir.), cert denied, 441 U.S. 965 (1979); United States v. Brown, 584 F.2d 252 (8th Cir. 1978).

There was probable cause in the Falso application and affidavit. This Court believed so and therefore issued the warrant. Falso cites the Martin decision by the Second Circuit and then spends considerable energy and efforts in his motion to convince this Court that Martin set forth some type of algebraic formula that must be followed anytime a search warrant is sought in connection to the internet and the downloading of pornography from sites on the internet. Martin did nothing of the sort. In fact, a careful and objective reading of Martin demonstrates that the Second Circuit confirmed what Gates and Jones stand for. Martin re-affirms the concept that "facts" count a great deal and the facts of each and every warrant application will dictate whether in each individual and unique fact driven scenario there exists probable cause. That is demonstrated from the tremendous amount of time spent by the Martin court analyzing facts unique to that case.

The Falso facts, as set forth in the affidavit, are not only distinguishable from Martin factually but in some ways they are more compelling and stronger than the facts in Martin. Martin did not involve a case where the defendant had a prior arrest, conviction, history and admission to specific conduct relating to the sexual abuse of a 7 year old child. At pages 18-19 of the affidavit, FBI agent Lyons sets forth very detailed and accurate information regarding Falso's thirst for children. FBI agent Lyons described how Falso sexually abused a 7 year old girl; that Falso was arrested and charged by the New York State Police with the crimes of Sexual Abuse and Endangering the Welfare of a Child; that Falso was interviewed by the New York State Police and admitted that "he (Falso) may have gone too far"; that Falso told the New York State Police investigator that "he (Falso) may have latent problems and that he might require some type of counseling"; and FBI agent Lyons also

26

described how Falso pleaded guilty to a crime of acting in a manner injurious to a child and received

three years probation for his plea and conviction.

These facts matter. These facts are very compelling and relevant. These facts contribute

considerably to the determination of probable cause. Unlike the defendant in Martin where there was

no information in the search warrant affidavit showing prior acts by Martin, Falso's prior criminal

conduct and specific facts of sexual abuse on a 7 year old child are factors with high relevancy and

substantial probative value in connection to the determination of probable cause. Defendant Falso

recognizes that proposition and therefore at pages 20-21 of defendant's Memorandum, Falso

attempts to convince this Court that all this information means nothing and is irrelevant. Falso even

argues that the Court is not permitted to consider this information because it was gathered from

police reports. Falso is wrong. Courts, the Second Circuit and the United States Supreme Court,

have consistently ruled that evidence of prior convictions of a defendant, and even evidence of prior

arrests, as to pertinent and related conduct and activities are very much so relevant and important to

the analysis of probable cause in issuing a warrant. See, United States v. Rowell, 903 F.2d 899 (2d

Cir. 1990); Jones v. United States, 362 U.S. 257 (1960); United States v. Jakobetz, 955 F.2d 786 (2d

Cir. 1992); United States v. Harris, 403 U.S. 573 (1971); United States v. Wagner, 989 F.2d 69 (2d

Cir. 1993). In his zeal, Falso states the following at the top of page 21 of his Memorandum when

referring to the fact that agent Lyons provided factual details of Falso's conviction as agent Lyons

recited them from a New York State Police report, "Although the Lyons' affidavit attempted to rely

on the allegations underlying allegations contained in reports, such reliance is not permissible.

Shepard v. United States,___ U.S.___ , 125 S.Ct. 1254 (2005)." That statement and argument is

not only misleading but is wrong. Shepard did not say that or stand for that proposition. Agent

27

Lyons' reliance and recitation of specific facts from a law enforcement report is absolutely permissible and he is absolutely permitted to convey those specific facts to a court in an affidavit seeking a warrant. Likewise, this Court too is absolutely permitted to consider and rely upon facts obtained from a police report in deciding probable cause for a search warrant. What is most troubling herein is that Falso cites <u>Shepard</u> as legal authority for his allegation that such action on the part of agent Lyons and reliance of such information by this Court is impermissible. Falso's cite of <u>Shepard</u> for this proposition is misleading and flat out false. As detailed above, <u>Shepard</u> dealt with the analysis of what information and documents can be examined and relied upon by the district court in determining whether a prior conviction qualifies as an appropriate conviction for purposes of enhancing statutory sentencing schemes.

It is the government's position that ample probable cause existed and this Court correctly so found when one considers and weighs all the facts recited to this Court, including, but not limited to the following: 1) all the specific facts and details concerning Falso's prior sex act on a child and the fact that he was arrested, charged, prosecuted and convicted by plea/admission in connection to facts and conduct relating to the sexual abuse of a child; 2) Falso's own statement and admission recognizing that he has latent problems in connection with being caught and arrested for sexually abusing a 7 year old child; 3) the fact that Falso's Yahoo User Id/e-mail address was found on the child pornography website which site was infiltrated by the FBI; 4) the fact that a forensic examination of that child pornography website appeared to indicate that a person using Falso's Yahoo User Id/e-mail address either gained access <u>or</u> attempted to gain access to the child pornography website; 5) the fact that said website provided hard core child pornography on the website itself <u>without</u> a membership and then additional child pornography was offered if one

28

became a member; 6) the fact that an undercover FBI agent who visited said website found on said website 11 images of child pornography <u>without</u> having had to become a member and then the site advertised additional child pornography if one became a member; 7) information received from Yahoo indicated that the above User Id/e-mail belonged to Yahoo subscriber David Falso at his residence in Cortland, New York and that the Falso User Id/e-mail account was accessed on a regular basis; 8) information received from Time Warner Cable indicated that Falso had a current Road Runner account and current Road Runner internet service and thereby reasonably inferring that Falso possessed a computer and used it using his Road Runner internet service from that residence; 9) the detailed information and descriptions in the affidavit of how persons interested in child pornography obtain, store, and possess child pornography; child pornography collector characteristics; use of computers in child pornography; Yahoo, Inc. background information.

Falso's motion to suppress the search warrant on probable cause grounds is meritless.

## Allegations of Misleading Information/Franks Hearing/Good Faith Exception:

Falso claims that FBI agent James Lyons misled this Court and offered misleading information in his affidavit. The government rejects this claim in the strongest possible sense and we find Falso's allegations reprehensible. We urge this Court to not only categorically reject Falso's allegations as lobbed directly at FBI agent Lyons but to affirm and recognize in its decision that FBI agent Lyons did nothing wrong and did not mislead the Court. Falso's smear tactics are designed to give him a springboard from which to argue that a <u>Franks</u> hearing is required and eventually to argue that the good faith exception to search warrants does not apply in this case. Falso recognizes the fact that even if he should prevail on the probable cause argument, the good faith exception would nevertheless apply and the government would prevail.

29

With that setting in mind, Falso in his motion resorts to contortion of words, phrases and ideas as to the Lyons affidavit in a desperate attempt to give his wild allegations life. Falso's allegations are the only thing that is misleading in this case.

Falso claims that agent Lyons misled this Court into believing that Falso was in fact a subscriber to the child pornography website (page 9 of Memorandum) and that Lyons invited the court to infer that records showed that Falso was a subscriber to this child pornography website (page 6 notice of motion/motion). Falso is wrong. Lyons' affidavit at the bottom of page 17 and then continuing at the top of page 18 clearly states that based upon a forensic examination of this child pornography website there were revealed several hundred **possible** subscribers along with their e-mail addresses. The key word there is **possible**. The affidavit then continues at the top of page 18 where it describes how subpoenas were then served on ISP's (internet service providers) for each e-mail address that had been identified on the child pornography website and which therefore may be a **possible** subscriber. Agent Lyons then described how the FBI received the information it sought by subpoena from the ISP's and that a review of those records form the ISP providers showed subscriber information: David J. Falso, 20 Peaceful Drive, Cortland, New York, Yahoo User ID: cousy1731@yahoo.com and that this e-mail was associated with the child pornography website. In that section of the affidavit, the words subscriber information is clearly referring to the subscriber information obtained from the ISP (in this case Yahoo), that being, Falso's name, address, and User ID/e-mail. It is not claiming or saying that Falso was in fact a subscriber of the child pornography website. It is simply reciting Falso's Yahoo ISP subscriber information as it was obtained by a subpoena to the ISP/Yahoo. Reading it in any other fashion makes no sense since agent Lyons just got finished saying that these e-mail addresses were of **possible** subscribers to the child pornography

30

website. The very next sentence then makes certain that the reader understands the information just conveyed. Agent Lyons stated, "Based upon investigation and examination conducted by Special Agent Todd Gentry and others, **it appears that a person with the e-mail address of cousy1731@yahoo.com either gained access or attempted to gain access to the website www.cpfreedom.com.** The key concepts there are "gained access OR attempted to gain access". Agent Lyons reminds the reader that Falso's e-mail address is a possible subscriber (Not certain) and Falso's e-mail either gained access OR attempted to gain access (Not certain that it did) to the child pornography website.

There is absolutely nothing deliberately or recklessly false or misleading in Lyons' affidavit that defendant can point to without engaging in a contortionist word game. The affidavit does not contain any knowing or intentional false statements and there is no indication of a reckless disregard for the truth. Franks v. Delaware, 438 U.S. 154, (1978). Therefore, Falso's motion should be denied and his motion for a Franks Hearing should also be denied.

Contrary to Falso's allegations, the "good faith" exception applies in this case. Therefore, this search is valid, regardless as to whether there was any deficiency with probable cause in the search warrant, given the fact that law enforcement acted in good faith in applying for the search warrant and in providing the information to the issuing court. United States v. Leon, 468 U.S. 897 (1984); Massachusetts v. Sheppard, 468 U.S. 981 (1984); Arizona v. Evans, 115 S. Ct. 1185 (1995).

Regardless as to what conclusions the Court finds regarding probable cause for the issuance of the search warrant, the exclusionary rule does not apply to evidence seized in objectively reasonable reliance on a search warrant later held to be invalid. United States v. Leon, 468 U.S. 897 (1984). This "good faith exception" certainly would apply to the case here in the event, for some

reason, this Court felt obliged to consider the "good faith" issue.

Whether the good faith exception to the exclusionary rule applies in a particular case is a question subject to *de novo* review.  United States v. Negrete-Gonzales, 966 F.2d 1277, 1282 (9th Cir. 1992); United States v. Simpkins, 914 F.2d 1054, 1057-58 (8th Cir. 1990), cert. denied, 498 U.S. 1101, 111 S.Ct. 997 (1991);  United States v. Bowling, 900 F.2d 926, 930 (6th Cir. 1990), cert. denied, 498 U.S. 837, 111 S.Ct. 109 (1990); United States v. Corral-Corral, 899 F.2d 927, 929 (10th Cir. 1990).

Whether the exclusionary sanction is appropriate is an issue separate from the question of whether the defendant's Fourth Amendment rights were violated.  United States v. Leon, 468 U.S. at 906; Illinois v. Gates, 426 U.S. at 223.  The Fourth Amendment contains no provision for excluding evidence.  See, United States v. Leon, 468 U.S. at 906.  The exclusionary rule is a judicially-created remedy designed not to provide redress to the defendant, but to deter police misconduct. Id.; United States v. Calandra, 414 U.S. 338, 347-48, 94 S.Ct. 613 (1974).

Determining whether to exclude evidence obtained in violation of the Fourth Amendment requires a balancing of the remedial objectives of the exclusionary rule with the cost of preventing the use of inherently trustworthy tangible evidence.  United States v. Leon, 468 U.S. at 906-907. Exclusion of such evidence interferes with the truth-finding function of the criminal justice system and results in letting the guilty go free.  Id. at 907.

"Particularly when law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system."  Id. at 907-908.  Accordingly, the exclusionary rule should be applied to suppress evidence where a Fourth Amendment violation has

been substantial and deliberate, but not where evidence was "'obtained in the reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment.'" Id. at 908-909, quoting Illinois v. Gates, 462 U.S. at 255.  Put another way, evidence from a search and seizure should be suppressed "'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" Illinois v. Krull, 480 U.S. 340, 348-49, 107 S.Ct. 1160 (1987), quoting United States v. Peltier, 422 U.S. 531, 542, 95 S.Ct. 2313 (1975).

"[T]he marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." United States v. Leon, 468 U.S. at 922.  Where, as here, the seizures were made pursuant to search warrants, deep inquiry into reasonableness rarely is required, for the warrant normally suffices to establish that the law enforcement officer has acted in good faith.  Id.; United States v. Ross, 456 U.S. 798, 823 n. 32, 102 S.Ct. 2157 (1982).  Suppression of evidence seized pursuant to a warrant thus remains an appropriate remedy only if: (1) the judge who issued the warrant "was misled by information in an affidavit which the affiant knew was false or would have known was false except for this reckless disregard for the truth"; (2) the issuing judge wholly abandoned his judicial role; (3) the affidavit is so obviously lacking in indicia of probable cause that reliance on the warrant is unreasonable; or (4) the warrant is so facially deficient that law enforcement officers cannot reasonably presume it to be valid.  United States v. Leon, 468 U.S. at 923.  See, United States v. Moore, 968 F.2d 216, 222 (2d Cir. 1992), cert. denied, 506 U.S. 980, 113 S. Ct. 480 (1992).  None of these exceptions to the Leon rule apply here.  Therefore, the good-faith exception to the exclusionary rule applies herein.

For all these reasons, Falso's motion to suppress evidence seized pursuant to the federal search warrant should be denied and his motion for a <u>Franks</u> Hearing should also be denied.

## CONCLUSION

Wherefore, the government respectfully urges this Court to deny defendant Falso's motions in all respects, except as consented to herein.

Dated: January 17, 2006

Respectfully submitted,

Glenn T. Suddaby
United States Attorney

By: Miroslav Lovric
Assistant U.S. Attorney

## <u>CERTIFICATE OF SERVICE FOR ELECTRONIC CASE FILING SYSTEM</u>

I hereby certify that on <u>January 17, 2006,</u> I electronically filed with the NDNY Clerk of the District Court using the CM/ECF system the above-referenced document(s) in connection with the above-referenced case. The CM/ECF system automatically sent electronic notifications of such filing to the attorneys of record in this case, as maintained by the District Court Clerk's Office, <u>AND</u> who are properly registered in the CM/ECF system for the NDNY as required pursuant to NDNY General Order #22. As for any attorney of record in this case who is not registered in the CM/ECF system for the NDNY, the government has caused to be mailed or faxed to that attorney either the actual CM/ECF electronic notification/e-mail as received from the CM/ECF system by the government and/or the actual documents being filed. Therefore, the non-registered attorney(s) will receive the same electronic ECF notice with the same information as will the attorney(s) who is/are registered in the CM/ECF system.

Miroslav Lovric
Assistant U.S. Attorney

# GOVERNMENT EXHIBIT 1

Lovric

AO 93 (Rev. 5/85) Search Warrant

ORIGINAL

U.S. DISTRICT COURT - N.D. OF N.Y.

**FILED**

JUN - 9 2005

AT_____ O'CLOCK

Lawrence K. Baerman, Clerk - Binghamton

# **United States District Court**

_____ **NORTHERN** _____ **DISTRICT OF** _____ **NEW YORK** _____

In the Matter of the Search of

premises located at  20 Peaceful Drive, Cortland, New York, a single story residence, white in color with blue trim, with attached garage.  The name Falso appears on a black colored mailbox located directly in front of the 20 Peaceful Drive residence.

## **SEARCH WARRANT**

Criminal No. 3:05- MJ-201 (DEP)

TO:  Any Special Agents of the FBI _____ and any Authorized Law Enforcement Officer

Affidavit having been made before me by  SA James T. Lyons, Jr. _____ who has reason to

Affiant

believe that ☐ on the person of or ☒ on the premises known as

**20 Peaceful Drive, Cortland, New York, a single story residence, white in color with blue trim, with attached garage.  The name Falso appears on a black colored mailbox located directly in front of the 20 Peaceful Drive residence.**

in the _____ **NORTHERN** _____ District of _____ **NEW YORK** _____ there is now concealed a certain person or property, namely

### **SEE ATTACHMENT A**

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

**YOU ARE HEREBY COMMANDED** to search on or before  JUNE 10, 2005

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search (in the daytime - 6:00 A.M. to 10:00 P.M.) and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to Hon. Thomas J. McAvoy

as required by law.                                                  Senior U.S. District Court Judge

June 1, 2005  @ 2:35 P.m.         at         Binghamton, New York

Date and Time Issued                                        City and State

Senior U.S. District Court Judge                          _Thomas J. McAvoy_

Name and Title of Judicial Officer                       Signature of Judicial Officer

AO93 (Rev. 5/85) SEARCH WARRANT

| | RETURN | |
|---|---|---|
| DATE WARRANT RECEIVED<br><br>6/1/2005 | DATE AND TIME WARRANT EXECUTED<br><br>6/8/2005   10:12 A.M. | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH<br><br>DAVID JON FALSO |

INVENTORY MADE IN THE PRESENCE OF

DAVID JON FALSO & SA T. KEVIN TALLEY

INVENTORY OF PERSONS OR PROPERTY TAKEN PURSUANT TO THE WARRANT

SEE ATTACHED INVENTORY LOG.

**CERTIFICATION**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_James L. Lynd Jr._

Subscribed, sworn to, and returned before me this date.

_Thomas J. McAvoy_     _June 9, 2005_
U.S. Judge or Magistrate        Date

**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF INVESTIGATION**
Receipt for Property Received/Returned/Released/Seized

On (date) _6/8/05_

At (time) _1:15 P.M._

(Name) _DAVID JON FALSO_

(Location)   20 Peaceful Drive, Cortland, New York

Item(s) listed below were:

☐ Received From
☐ Returned To
☐ Released To
☑ Seized

| ITEM# | DESCRIPTION |
|---|---|
| 1 | Computer, no brand name, no serial numbers noted. Sticker on back says "QC Passed" with a line thru 2003 and 4. A silver minitower, with trays labeled DVD-ROM and CD-Writer. Also has a 3.5" disk drive. Silver on/off button. Computer face is silver with black trim. There is a windows logo sticker on the upper right front of face that says "Designed for Microsoft Windows XP" |
| 2 | One box containing printouts of pictures of child and adult pornography |
| 3 | Box containing photographs |
| 4 | Papers containing emails, faxes, maps, handwritten notes and photographs. |
| 5 | Four DVD+Rs labeled #1, #2, #3 and #4, respectively. |
| 6 | Book titled:  Thailand - Lonely Planet Travel Survival |
| 7 | Priority mail envelope containing email printouts |
| 8 | Federal Express envelope containing printouts from online message boards |
| 9 | Four pages of printouts from www.worldsexguide.com/forum/showthread.php?t=8974, hotel envelope and guest folio dated 02/07/04 of Mandarin Oriental Manilla, and handwritten notes with email address. |
| 10 | Four books |
| 11 | Video tape labeled "Mademoiselle Striptease" |
| 12 | S&W 38 special revolver, serial # BKF3751 |
| 13 | Emails printouts, printouts of pictures of child pornography and handwritten notes. |
| 14 | Hand written log of sexual activity and handwritten notes. |
| 15 | Four passports:  Passport #s 1) 152500793, 2) A2705659, 3) F739133, 4) 060637629 |
| 16 | Teen DVD labeled "Sideways" |
| 17 | Letter from Devy Alburo of Davao City, Philippines to David Falso post marked May 27, 2005 containing a letter with three photographs |

(END OF LIST)

Total of 17 Item(s) Listed

Received by: _____
(Signature)

Received from: _____
(Signature)

*Page 1 of 1*

## ATTACHMENT A

## LIST OF ITEMS TO BE SEARCHED FOR AND SEIZED

This affidavit is in support of application for a warrant to search the premises known as 20 Peaceful Drive, Cortland, New York, which is more specifically identified in the body of the application, including any computers, associated storage devices and/or other devices located therein that can be used to store information and/or connect to the Internet, for records and materials evidencing a violation of Title 18, United States Code, Sections 2252 and 2252A, which criminalizes, in part, the possession, receipt and transmission of child pornography (defined in 18 U.S.C. § 2256), as more specifically identified below:

1. Any and all tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, tape systems and hard drive, terminals (keyboards and display screens) and other computer related operation equipment, in addition to computer photographs, digital graphic file formats and/or photographs, slides or other visual depictions of such digital graphic file format equipment that may be, or are used to visually depict child pornography, child erotica, information pertaining to the sexual interest in child pornography, sexual activity with children or the distribution, possession, or receipt of child pornography, child erotica or information pertaining to an interest in child

pornography or child erotica.

2.    Any and all computer software, including programs to run operating systems, applications (like word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

3.    Any computer-related documentation, which consists of written, recorded, printed or electronically stored material that explains or illustrates how to configure or use computer hardware, software or other related items.

4.    Any and all records and materials, in any format and media (including, but not limited to, envelopes, letters, papers, e-mail, chat logs and electronic messages), pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, including , but not limited to, evidence of the e-mails sent to and/or from  "cousy1731" and "dfalso1".

5.    In any format and media, all originals, copies and negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, or child erotica.

6.    Any and all records and materials, in any format and media (including, but not limited to, envelopes, letters, papers, e-mail, chat logs and electronic messages) identifying persons transmitting through interstate or foreign commerce, including via computer, any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code,

Section 2256, or child erotica.

7.   Any and all records and materials, in any format and media (including, but not limited to, envelopes, letters, papers, e-mail, chat logs,  electronic messages, other digital data files and web cache information), bearing on the receipt, shipment or possession of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

8.   Records of communication (as might be found, for example, in digital data files) between individuals concerning the topic of child pornography, the existence of sites on the Internet that contain child pornography or who cater to those with an interest in child pornography, as well as evidence of membership in online clubs, groups, services, or other Internet sites that provide or make accessible child pornography to its members and constituents.

9.   Evidence of association, by use, subscription or free membership, with online clubs, groups, services or other Internet sites that provide or otherwise make accessible child pornography.

10.   Evidence of any online storage, e-mail or other remote computer storage subscription to include unique software of such subscription, user logs or archived data that show connection to such service, and user login and passwords for such service.

11.   Records evidencing occupancy or ownership of the premises described above, including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence.

12.   Records, in any format or media, evidencing ownership or use of computer equipment and paraphernalia found in the residence to be searched, including, but not limited to, sales receipts, registration records, records of payment for Internet access, records of payment for access to newsgroups or other online subscription services, handwritten notes and handwritten notes in computer manuals.



# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK

IN THE MATTER OF THE SEARCH OF:
THE RESIDENCE LOCATED AT
20 PEACEFUL DRIVE
CORTLAND, NEW YORK 13045

3: 05-mJ- 201 (DEP)

### Application and Affidavit for Search Warrant

I, James T. Lyons, Jr., being duly sworn do depose and state as follows:

1. I have been employed as a Special Agent of the Federal Bureau of Investigation (FBI) for eight years.  I am currently assigned to the Albany Field Division, Binghamton, New York Resident Agency.  I have investigated matters involving the sexual exploitation of children via computers and the internet, specifically those addressing violations of Title 18, United States Code, Section 2252A, which criminalizes the possession, receipt, and transmission of child pornography.  I have made arrests and conducted searches pertaining to these types of

1

investigations.

2.   This application and affidavit are made in support of a request for a search warrant to search for and seize instrumentalities, fruits, and evidence of violations of Title 18, United States Code, Section 2252A, which criminalizes, among other things, the possession, receipt, and shipment of child pornography and other related materials.  The items that are the subject of the search and seizure applied for in this affidavit are more specifically described in Attachment A.

3.   The location to be searched is known as the residence of David J. Falso located at 20 Peaceful Drive, Cortland, New York, and this affidavit is submitted in support of a warrant to search the entire premises, including the residential dwelling and any computer and computer media located therein where the instrumentalities, fruits, and evidence of violations of Title 18, United States Code, Section 2252A, as specified further in Attachment A, might be found.

4.   The premises known as 20 Peaceful Drive, Cortland, New York, is a single story residence, white in color with blue trim, with attached garage.  The name Falso appears on a black colored mailbox located directly in front of the 20 Peaceful Drive residence.

5.   The statements contained in this application and affidavit are based in part on information provided by Special Agents of the FBI and on my experience and background as an Agent with the FBI.  Since this affidavit is being submitted for the

limited purpose of securing a search warrant, I have not included every fact known to me concerning this investigation. I have set forth only the facts I believe are necessary to establish probable cause to believe that evidence of violation of Title 18, United States Code, Section 2252A, is located at the above address.

### APPLICABLE LAW

6. Title 18, United States Code, Section 2252A, entitled "Certain activities relating to material constituting or containing child pornography", provides, in part, that (a) Any person who -

(1) knowingly mails, or transports, or ships in interstate or foreign commerce by any means, including by computer, any child pornography;

(2) knowingly receives or distributes -

(A) any child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer; or

(B) any material that contains child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer;

(3) knowingly

(A) reproduces any child pornography for distribution through the mails, or in interstate or foreign commerce by any means, including computer; or

(B) advertises, promotes, presents, distributes, or

3

solicits through the mails, or in interstate or foreign commerce
by any means, including by computer, any material or purported
material in a manner that reflects the belief, or that is
intended to cause another to believe, that the material or
purported material is, or contains -

(i) an obscene visual depiction of a minor
engaging in sexually explicit conduct; or

(ii) a visual depiction of an actual minor
engaging in sexually explicit conduct;...

(5)(B) knowingly possess any book, magazine,
periodical, film, videotape, computer disk, or any other material
that contains an image of child pornography that has been mailed,
or shipped or transported in interstate or foreign commerce by
any means, including by computer, or that was produced using
materials that have been mailed, or shipped or transported in
interstate or foreign commerce by any means, including by
computer,...

shall be punished as provided in subsection (b).

7.   Per 18 USC § 2256(1), the term "minor" means any person
under the age of eighteen years.

8.   Per 18 USC § 2256(8), the term "child pornography" means
any visual depiction, including any photograph, film, video,
picture, or computer or computer-generated image or picture,
whether made or produced by electronic, mechanical, or other
means, of sexually explicit conduct, where: (A) the production of
such visual depiction involves the use of a minor engaging in

4

sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

     9.  Per 18 U.S.C. § 2256(2)

     (A)  Except as provided in subparagraph (B), "sexually explicit conduct" means actual or simulated –

     (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

     (ii) bestiality;

     (iii) masturbation;

     (iv) sadistic or masochistic abuse; or

     (v) lascivious exhibition of the genitals or pubic area of any person;

     (B)  For purposes of subsection 8(B) of this section, "sexually explicit conduct" means –

     (i) graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex, or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited;

     (ii) graphic or lascivious simulated:

     (I) bestiality;

(II) masturbation; or

(III) sadistic or masochistic abuse; or

(iii) graphic or simulated lascivious exhibition of the genitals or pubic area of any person.

## DEFINITIONS

10.   "Child Erotica" are materials or items that are sexually arousing to pedophiles but that are not in and of themselves obscene or which do not necessarily depict minors in sexually explicit poses or positions.   Former FBI SSA Kenneth Lanning, whose qualifications are discussed later, defines child erotica as follows:

> Any material, relating to children, that is sexually arousing to a given individual . . . [s]ome of the more common types of child erotica include photographs that are not sexually explicit, drawings, sketches, fantasy writings, diaries, and sexual aids."

See Burgess, Ann, Child Pornography and Sex Rings, Ch. 4 authored by Kenneth Lanning, at p. 83 (Lexington books 1984).

11.   The term "computer," as used herein, is defined pursuant to Title 18, United States Code, Section 1030(e)(1), as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."

12.   "IP address" or "Internet Protocol address" refers to a

6

unique number used by a computer to access the Internet.  IP
addresses can be dynamic, meaning that the Internet Service
Provider (ISP) assigns a different unique number to a computer
every time it accesses the Internet.  IP addresses might be
static whereby the user's ISP assigns his computer a unique IP
address - and that same number is used by the user every time his
computer accesses the Internet.

13.   The terms "records," "documents," and "materials"
include all information recorded in any form, visual or aural,
and by any means, whether in handmade form (including, but not
limited to, writings, drawings, paintings), photographic form
(including, but not limited to, microfilm, microfiche, prints,
slides, negatives, videotapes, motion pictures, photocopies),
mechanical form (including, but not limited to, phonograph
records, printing, typing) or electrical, electronic or magnetic
form (including, but not limited to, tape recordings, cassettes,
compact discs, electronic or magnetic storage devices such as
floppy diskettes, hard disks, CD-ROMs, digital video disks
(DVDs), Personal Digital Assistants (PDAs), Multi Media Cards
(MMCs), memory sticks, optical disks, printer buffers, smart
cards, memory calculators, electronic dialers,  or electronic
notebooks, as well as digital data files and printouts or
readouts from any magnetic, electrical or electronic storage
device).

14.   "Sexually Explicit Conduct" means actual or simulated
(a) sexual intercourse, including genital-genital, oral-genital,

or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.

15.    "URL" or "Uniform Resource Locator" refers to Internet addresses.  Each file on the Internet has a unique address called a Uniform Resource Locator, more commonly known as URL.

16.    "Visual Depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image.  (See 18 U.S.C. § 2256(5)).

## SPECIFICS OF SEARCHES AND SEIZURES OF COMPUTER SYSTEMS

17.    Searches and seizures of evidence from computers commonly require agents to download or copy information from the computer and their components, or seize most or all computer items (computer hardware, software, and related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

a.    Computer storage devices (like hard disks, diskettes, tapes, laser disks, CD-ROMs, and DVD drives) can store the equivalent of hundreds of thousands of pages of information. Additionally, a suspect may try to conceal criminal evidence, and he might store criminal evidence in random order or with deceptive file names or deceptive file extensions.  This requires searching authorities to examine all the stored data to determine

8

which particular files are evidence or instrumentalities of crime.  This sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical to attempt this kind of data search on site.

b.  Searching computer systems for criminal evidence is a highly technical process, requiring expert skill and a properly controlled environment.  The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data.  In any event, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password-protected, or encrypted files.  Since computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction (both from external sources and from destructive codes imbedded in the system, such as "booby traps"), a controlled environment is essential to its complete and accurate analysis.

18.  Based upon your affiant's consultation with experts in computer searches, data retrieval from computers and related media, and consultations with other agents who have been involved in the search of computers and retrieval of data from computer systems, your affiant knows that searching computerized information for evidence or instrumentalities of crime commonly requires agents to seize all of a computer system's input/output

9

peripheral devices, related software, documentation, and data
security devices (including passwords) so that a qualified
computer expert can accurately retrieve the system's data in a
laboratory or other controlled environment.  This is true because
of the following:

a.  The peripheral devices which allow users to enter
or retrieve data from the storage devices vary widely in their
comparability with other hardware and software.  Many system
storage devices require particular input/output (or "I/O")
devices in order to read the data on the system.  It is important
the analyst be able to properly re-configure the system as it now
operates in order to accurately retrieve the evidence contained
therein.  In addition, the analyst needs the relevant system
software (operating systems, interfaces, and hardware drivers)
and any applications software, which may have been used to create
the data (whether stored on hard drives or on external media), as
well as all related instruction manuals or other documentation
and data security devices.  If the analyst determines that the
I/O devices, software, documentation, and data security devices
are not necessary to retrieve and preserve the data after
inspection, the government will return them as soon as possible.

b.  In order to fully retrieve data from a computer
system, the analyst also needs all magnetic storage devices as
well as the central processing unit (CPU).  Further, the analyst
again needs all the system software (operating systems or
interfaces, and hardware drivers) and any applications software

10

that may have been used to create the data (whether stored on
hard drives or on external media) for proper data retrieval.

      c.   In addition, there is probable cause to believe
that the computer and its storage devices, the monitor, keyboard,
and modem are all instrumentalities of the crimes of receipt,
distribution and possession of child pornography, in violation of
law, and should all be seized.

19.   I have been advised by computer forensic experts and
other experts who have conducted computer searches that people
commonly store information on their computers, without
periodically cleaning out all of their computer files.  I also
know that even if files, including graphic image files, have been
deleted, they will be sent to a recycling bin.   These files can
easily be restored if they are retained in the recycling bin.  A
user can delete the files in the recycling bin, but as described
below, the date is still on the computer.  Even if a computer
file has been deleted, the actual data in the file is not erased;
only the index or directory to the file is deleted.   The file
remains stored on the hard drive of the computer in "slack
space."  ("Slack space" refers to space on a computer's hard
drive that his available for use by the computer.  As time
passes, and space on the hard drive is needed for other
functions, slack space is randomly overwritten with other data.).
There is technology which would enable a computer forensic expert
to retrieve files from "slack space".  There is also currently
software that allows an individual to delete all of the files in

the computer's "slack space."

<u>**SEARCH METHODOLOGY TO BE EMPLOYED**</u>

20.   The search procedure of electronic data contained in computer hardware, computer software, and/or memory storage devices may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

a.   examination of all of the data contained in such computer hardware, computer software, and/or memory storage devices to view the data and determine whether that data falls within the items to be seized as set forth herein;

b.   searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

c.   surveying various file directories and the individual files they contain;

d.   opening files in order to determine their contents;

e.   scanning storage areas;

f.   performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to

12

appear in the evidence described in Attachment A; and/or

g.    performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment A.

## USE OF COMPUTERS WITH CHILD PORNOGRAPHY

21.    As a result of my training, experience and conversations with experts in the field, I know that computers are utilized by individuals who exploit children (which includes collectors of child pornography) to: a) correspond with like-minded individuals via e-mail, chat, bulletin boards, newsgroups, instant messages, file transfers and other means; b) store identifying information concerning child victims, as well as identifying information about other individuals who share the same interests; c) locate, view, download, collect and organize images of child pornography found through the Internet. Computers also afford individuals a degree of anonymity.

22.    Collectors and distributors of child pornography also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo! and Hotmail, among others.  The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats.  A user can set up an online storage account from any computer with access to the Internet.  These online storage accounts are often free but can involve a charge. Payment is almost always made via credit card, debit card, or

13

other similar payment service.

23.   A subscriber assigned a free online storage account frequently can set up such accounts by providing limited identifying information.  Any information provided is frequently fictitious in an attempt to preserve the anonymity of the user. Consequently, even if it is known that a collector or distributor of child pornography is a subscriber of a free online storage service, the service provider frequently will have no records in that subscriber's name.  Instead, the online service will only be able to identify files, including child pornography, that are associated with a "login," or unique, user-created identity the subscriber uses to "log on" to the online service.

24.   Such an online storage account is particularly useful to a collector or distributor of child pornography.  Such a subscriber can collect, store, view and distribute electronic images, including child pornography, directly from the online service.  Consequently, the illegal files have minimal contact with the subscriber's home computer.  The subscriber can also manipulate the files on an online storage service from any computer connected to the Internet.

25.   Nonetheless, evidence of an online storage account is often found on a home computer of a user subscribing to such a service.  Evidence of an online storage account may take the form of passwords located in encrypted, archived or other files on the user's home computer.  Other evidence can also be found through unique software that may exist on a user's home computer that has

14

been developed by the online storage service.  This unique software will frequently contain evidence not only of the existence of such accounts, but the login and password.

26.  As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes.  Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmark" files.  Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others).  In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used.  In other words, if a computer user were to go to the website called "DOJ.gov", a "footprint" in the browser cache may be found pointing to that website, indicating that particular computer was used to visit that website.

## YAHOO! Inc.

27.  Yahoo! Inc. is a commercial computer service company that provides services to Internet users that include e-mail, Groups, Internet search capability, games, personal ads, chat, instant messaging, and other services.  Many of the services offered by Yahoo are free to the user. Users of certain Yahoo services are required to register with Yahoo to obtain a Yahoo

ID.

     a.  A Yahoo ID is a unique identifier of a user's account.  The registration process requires the selection of an ID (sometimes referred to as a screen name, Login Name, or profile), a password, and the voluntary supply of some personal information.  This process is completed on line.

     Example:  Using Yahoo's Internet search engine does not require a Yahoo ID.  However, using the Yahoo Games service or using the web features of the Yahoo Groups service does require a user to sign in using a Yahoo ID.

     b.  Up to six profiles can be associated with a single Yahoo ID.  These Profiles are also known as aliases and allow the user to appear as someone other than their Yahoo ID when using certain Yahoo services.  Other users of the service may be able to view profile information.  Yahoo ID registration and profile information is supplied by the user and is not verified by Yahoo.  Profile information can be listed or unlisted, similar to telephone listings.

### FACTUAL BACKGROUND

28.  On or about 07/31/2003, FBI Special Agent Todd Gentry, Kansas City Division, obtained the IP address of a website which advertised and contained child pornography.  When the IP address, 207.36.140.60, was accessed via the Internet, a web page belonging to the CP Freedom Group was displayed.  CyberGate Incorporated, of Fort Lauderdale, Florida, was the network administrator for this IP address.  The website was hosted by

www.valueweb.net and contained approximately eleven images of child pornography. The website advertised additional child pornography, but the URL was hidden until a membership was purchased.

29.   On or about 07/31/2003, FBI Special Agent Michael Daniels, Kansas City Division, acting in an undercover capacity, signed up for a one month membership. Special Agent Daniels was charged $99.00 for the membership and the $99.00 membership charge appeared to have been processed though Wells Fargo Bank. Special Agent Daniels subsequently received an e-mail from CP Freedom Group, registration@cp-freedom.com. The e-mail contained the URL www.cp-members.com, login: 300523, and password: 06587620. The e-mail stated that the membership was good for one month.

30.   The website www.cp-members.com, IP address 216.180.251.147, was registered to CP Freedom Group which had a mailing address in San Francisco, California. The IP address was hosted by Net Depot, Inc. of Atlanta, Georgia. The domain name (www.cp-members.com) was registered through InterCosmos Media Group, Inc., of New Orleans, Louisiana, and the registrant was listed as Ded Moroz. A remote IP address of 66.118.166.80 was also listed on the InterCosmos account associated with Ded Moroz. The remote IP address was administered by Sago Networks, of Tampa, Florida.

31.   In or about July 2004, Special Agent Todd Gentry reviewed the completed forensic examination of the website

hosting www.cpfreedom.com.  The forensic examination revealed
several hundred possible subscribers along with e-mail addresses
and other information.  In or about July 2004, subpoenas were
served on appropriate ISP's for each e-mail address identified on
the www.cpfreedom.com website.  In or about September 2004, all
subpoena requests were returned to the FBI.  Pursuant to a review
of the subpoenaed records, the following subscriber information
(among others) was associated with the www.cpfreedom.com website:
David J. Falso, 20 Peaceful Drive, Cortland, New York, Yahoo User
ID: cousy1731@yahoo.com.  Based upon investigation and
examination conducted by Special Agent Todd Gentry and others, it
appears that a person with the e-mail address of
cousy1731@yahoo.com either gained access or attempted to gain
access to the website www.cpfreedom.com.  Special Agent Gentry's
investigation and review of forensic examination revealed that
the material associated with the www.cpfreedom.com website is
hardcore child pornography.

     32.  In or about December 2004, your affiant obtained a New
York State Police report regarding David J. Falso, of 20 Peaceful
Drive, Cortland, New York.  A review of this report revealed that
on or about 02/18/1987, Falso was arrested by the New York State
Police and Falso was charged with Sexual Abuse and Endangering
the Welfare of a Child.  The report reflected that Falso sexually
abused a seven year old female when he placed his hands inside
the female's underwear and digitally penetrated the female.  The
female informed the New York State Police that she referred to

Falso as "Cousey".  Falso was interviewed by a New York State
Police Investigator and Falso admitted he tickled the female and
may have gone too far.  Falso also admitted to the New York State
Police Investigator that he (Falso) may have latent problems and
that he might require some type of counseling.  On or about
09/21/1987, Falso pleaded guilty to Acting in a Manner Injurious
to a Child less than Sixteen, a New York State Class A
Misdemeanor, for which Falso received a sentence of three years
probation.

33.  On or about 04/04/2005, pursuant to a subpoena issued
to New York State Electric and Gas (NYSEG), NYSEG provided
records which reflect that Falso has a current utilities account
at 20 Peaceful Drive, Cortland, New York.  The records further
reflect that on or about 10/15/1984, Falso initially established
the NYSEG utilities account at 20 Peaceful Drive, Cortland, New
York.

34.  On or about 04/12/2005, pursuant to a subpoena issued
to Yahoo! Inc., Yahoo provided records which reflect that Falso
has an active Yahoo account.  Falso has a Yahoo login name of
"cousy1731" and a Yahoo e-mail address of cousy1731@yahoo.com.
Falso's Yahoo account was established on or about 06/02/1998 and
the residential address associated with Falso's Yahoo account is
listed as 20 Peaceful Drive, Cortland, New York, 13045.  The
Yahoo records also reflect that Falso's Yahoo account was
accessed on a regular basis during the period 03/21/2005 -
04/10/2005.  Additionally, the Yahoo records reflect that Falso

19

has an alternate e-mail address of dfalso1@twcny.rr.com.

35.   On or about 05/20/2005, pursuant to a subpoena issued to Time Warner Cable, Time Warner Cable provided records which confirmed that Falso has an active Time Warner Cable Road Runner account of "dfalso1".  The records also reflect that Road Runner service was established at Falso's residence, 20 Peaceful Drive, Cortland, New York, on or about 02/09/2004.  As of 05/20/2005, Falso's Road Runner account was still active.  Based upon the fact that Falso has active Road Runner service at 20 Peaceful Drive, Cortland, New York, it is logical to infer that Falso possesses a computer at 20 Peaceful Drive, Cortland, New York, to access the aforementioned Road Runner service.

<h3 style="text-align:center">CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS</h3>

36.   I have discussed the facts of this investigation with Special Agent David C. Fallon, the Crimes Against Children/Innocent Images National Initiative Coordinator for the FBI Albany Division.  Special Agent Fallon has consulted with FBI Supervisory Special Agent (SSA) James T. Clemente who has worked in the Behavioral Analysis Unit of the FBI since 1998.  SSA Clemente has been a Special Agent with the FBI since 1987.  As a member of the Behavioral Analysis Unit, SSA Clemente consults on child exploitation cases throughout the United States, South America, and certain European and African countries.  Since 1998, he has received three Exceptional Performance Awards from the Department of Justice and a Superior Service Award from the FBI. In addition, he has received numerous letters of commendation

from state, federal, and local law enforcement in connection with his work in the Behavioral Analysis Unit.

37.   SSA Clemente's training has involved a significant number of specialized courses in the area of child exploitation, including, but not limited to the following:  Innocent Images On-Line Sex Crimes Against Children; National Crimes Against Children; On-Line Sex Crimes Against Children; Clinical Forensic Psychology; Behavioral Analysis of Violent Crime; Missing and Exploited Children Seminar; Research Methodologies; MO, Ritual & Signature Advanced Seminar; and Criminology.  In addition, he has mentored under, worked with, studied the articles of, and taught with Kenneth V. Lanning, a Supervisory Special Agent, FBI (retired as of October, 2000).  SSA Lanning has, over the past 27 years, authored numerous articles on the topic of sexual victimization of children and behavioral analysis of child molesters.  His work forms the basis of the behavioral analysis performed by the FBI in child exploitation cases.

38.   SSA Clemente has assisted in the writing of numerous search warrant affidavits and has testified as an expert witness in federal court in the areas of child sex offender behavior, child sexual victimology and child pornography.  He has given over 100 presentations and lectures to local, state and federal law enforcement agencies, prosecutors, and health care professionals throughout the United States on various topics related to child exploitation, including, but not limited to the following topics:  Behavioral Analysis of Child Sex Crimes

21

Offenders, On-Line Sex Crimes Against Children, and Equivocal Death Investigations.

39.   As a member of the Behavioral Analysis Unit, SSA Clemente has analyzed and consulted on between one and two hundred child sexual exploitation and victimization cases a year. His analyses are based on all available evidence, including chat records, image collection analysis, collection themes, possession of erotica, possession of sexual paraphernalia, fantasy literature and writings, other relevant acts, and background information.   The vast majority of the cases he has analyzed have involved either Preferential or Situational Sex Offenders.   His role in these cases has varied as follows:   from analyzing investigative results for the purpose of making investigative suggestions, to providing expert affidavits for search warrant applications, to providing interview strategies for subjects and victims, to consulting with local, state and federal prosecutors on trial strategies.   In addition, SSA Clemente has interviewed between 80 and 100 offenders himself.   A behavioral assessment is not a clinical diagnosis, rather it is a law enforcement tool used to identify and predict offender behavior.

40.   SSA Clemente has advised Special Agent Fallon of the following traits and characteristics that are generally found to exist and be true in cases involving individuals who collect child pornography:

a.   The majority of individuals who collect child pornography are persons who have a sexual attraction to children.

22

They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

       b.   The majority of individuals who collect child pornography collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification.  The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography but which nonetheless fuel their deviant sexual fantasies involving children.

       c.   The majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials.  They almost always maintain their collections in the privacy and security of their homes or other secure location.

       d.   The majority of individuals who collect child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support.  This contact helps these individuals to rationalize and validate their deviant sexual interest and associated behavior.  The different Internet-based vehicles used by such individuals to communicate with each

23

other include, but are not limited to, e-mail, e-mail groups, bulletin boards, IRC, newsgroups, instant messaging, and other similar vehicles.

e.   The majority of individuals who collect child pornography maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children, as a way of understanding their own feelings toward children, justifying those feelings and finding comfort for their illicit behavior and desires.  Such individuals rarely destroy these materials because of the psychological support they provide.

f.   The majority of individuals who collect child pornography often collect, read, copy or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests.  These contacts are maintained as a means of personal referral, exchange or commercial profit.  These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper.

41.  The following court decisions support some of these conclusions:

A.   United States v. Ricciardelli, 998 F.2d 8, 12, n. 4 (1st Cir. 1993).  ("[H]istory teaches that collectors [of child pornography] prefer not to dispose of their dross, typically

24

retaining obscene materials for years.");

B.   United States v. Winningham, 953 F.Supp. 1068, 1079, n. 19 (D.Minn. 1996).   (Formalized opinion concerning proclivities of pedophiles are not always necessary in a search warrant affidavit, since there is a "commonsensical inference that those who treasure such prurience do so for extended viewing, and for trafficking with others who share the same persuasion.");

C.   United States v. Lamb, 945 F.Supp. 441, 460(N.D.N.Y. 1996)("The observation that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes is supported by common sense and the cases.   Since the materials are illegal to distribute and possess, initial collection is difficult.   Having succeeded in obtaining images, collectors are unlikely to quickly destroy them.   Because of their illegality and the imprimatur of severe social stigma such images carry, collectors will want to secret them in secure places, like a private residence.   This proposition is not novel in either state or federal courts: pedophiles, preferential child molesters, and child pornography collectors maintain their materials for significant periods of time." ).

42.   Based upon my training and experience, conversations with Special Agent Fallon, case law, information provided by SSA Clemente as well as SA's Todd Gentry and Michael Daniels, and the facts listed in this affidavit, it is my opinion that there is

25

probable cause to believe that the individual utilizing the Yahoo ID "cousy1731"  and the Road Runner ID "dfalso1" is a collector of child pornography.

### CONCLUSION

43.  Based upon all of the information set forth in this application, including information provided by SSA Clemente, SA David Fallon, SA Todd Gentry, and SA Michael Daniels, your affiant respectfully submits that there is probable cause to believe that the individual utilizing the Yahoo ID "cousy1731" and Road Runner ID "dfalso1", using a computer located at 20 Peaceful Drive, Cortland, New York,  the residence of David J. Falso, violated Title 18, U.S.C., Sections 2252 and 2252A by receiving and possessing child pornography and that evidence of this crime, listed in Attachment A and made part of this application and affidavit, is probably located at said address.


JAMES T. LYONS, JR.
Special Agent, FBI


SUBSCRIBED TO AND SWORN TO
BEFORE ME THIS 1st th DAY
OF JUNE, 2005

THOMAS J. MCAVOY
SENIOR JUDGE, UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

26

## ATTACHMENT A

## LIST OF ITEMS TO BE SEARCHED FOR AND SEIZED

This affidavit is in support of application for a warrant to search the premises known as 20 Peaceful Drive, Cortland, New York, which is more specifically identified in the body of the application, including any computers, associated storage devices and/or other devices located therein that can be used to store information and/or connect to the Internet, for records and materials evidencing a violation of Title 18, United States Code, Sections 2252 and 2252A, which criminalizes, in part, the possession, receipt and transmission of child pornography (defined in 18 U.S.C. § 2256), as more specifically identified below:

1. Any and all tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, tape systems and hard drive, terminals (keyboards and display screens) and other computer related operation equipment, in addition to computer photographs, digital graphic file formats and/or photographs, slides or other visual depictions of such digital graphic file format equipment that may be, or are used to visually depict child pornography, child erotica, information pertaining to the sexual interest in child pornography, sexual activity with children or the distribution, possession, or receipt of child pornography, child erotica or information pertaining to an interest in child

pornography or child erotica.

2.   Any and all computer software, including programs to run operating systems, applications (like word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

3.   Any computer-related documentation, which consists of written, recorded, printed or electronically stored material that explains or illustrates how to configure or use computer hardware, software or other related items.

4.   Any and all records and materials, in any format and media (including, but not limited to, envelopes, letters, papers, e-mail, chat logs and electronic messages), pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, including , but not limited to, evidence of the e-mails sent to and/or from  "cousy1731" and "dfalso1".

5.   In any format and media, all originals, copies and negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, or child erotica.

6.   Any and all records and materials, in any format and media (including, but not limited to, envelopes, letters, papers, e-mail, chat logs and electronic messages) identifying persons transmitting through interstate or foreign commerce, including via computer, any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code,

Section 2256, or child erotica.

7.   Any and all records and materials, in any format and media (including, but not limited to, envelopes, letters, papers, e-mail, chat logs,  electronic messages, other digital data files and web cache information), bearing on the receipt, shipment or possession of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

8.   Records of communication (as might be found, for example, in digital data files) between individuals concerning the topic of child pornography, the existence of sites on the Internet that contain child pornography or who cater to those with an interest in child pornography, as well as evidence of membership in online clubs, groups, services, or other Internet sites that provide or make accessible child pornography to its members and constituents.

9.   Evidence of association, by use, subscription or free membership, with online clubs, groups, services or other Internet sites that provide or otherwise make accessible child pornography.

10.  Evidence of any online storage, e-mail or other remote computer storage subscription to include unique software of such subscription, user logs or archived data that show connection to such service, and user login and passwords for such service.

11.  Records evidencing occupancy or ownership of the premises described above, including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence.

12.    Records, in any format or media, evidencing ownership or use of computer equipment and paraphernalia found in the residence to be searched, including, but not limited to, sales receipts, registration records, records of payment for Internet access, records of payment for access to newsgroups or other online subscription services, handwritten notes and handwritten notes in computer manuals.

# GOVERNMENT EXHIBIT 2

FD-302 (Rev. 10-6-95)

- 1 -

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription    06/10/2005

DAVID JON FALSO, date of birth: 03/14/1941, SSAN: 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, of 20 Peaceful Drive, Cortland, New York, was interviewed at his residence.  FALSO was interviewed during the execution of a court authorized search of FALSO's residence.  On 06/01/2005, Senior Judge THOMAS J. MCAVOY, United States District Court, Northern District of New York, signed a search warrant which authorized the search of FALSO's residence.

On the below referenced date, SA LYONS knocked on FALSO's screen door and observed FALSO seated on the couch in FALSO's living room.  FALSO was advised of SA LYONS' identity and SA LYONS requested to speak to FALSO.  FALSO agreed to meet agents in the garage of his residence as he claimed to have a mechanical problem with the front door of his residence.

FALSO emerged into the attached garage and was met by SA's LYONS and CAPONE.  SA LYONS again advised FALSO of the identities of the interviewing agents and informed FALSO that the FBI was present to execute a court authorized search of his residence.  FALSO was provided with a copy of said search warrant and was advised that agents would be searching for items of evidence related to child pornography.  SA LYONS asked FALSO if he possessed any child pornography and FALSO admitted he possessed a box of child pornography in his bedroom.  SA LYONS requested to speak further with FALSO and FALSO agreed to speak to SA's LYONS and CAPONE at the kitchen table in FALSO's residence.  FALSO subsequently provided the following information:

FALSO is the owner of Patino Murphy's bar, 17 Central Avenue, Cortland, New York, and Bald Lucy's bar, 31 Central Avenue, Cortland, New York.  FALSO has been in the bar business since approximately 1972.  FALSO obtained a home computer approximately four years ago and he began downloading and printing child pornography from the internet.  FALSO admitted he likes to look at pornographic pictures of young girls.  FALSO repeatedly stated that he wasn't proud of the fact that he liked child pornography; however, FALSO felt it was a "victimless" crime as he hadn't hurt anybody.

| | | | |
|---|---|---|---|
| Investigation on | 06/08/2005 | at | Cortland, New York |
| File # | 305C-AL-46914 | Date dictated | 06/10/2005 |

SA JAMES T. LYONS, JR.
by    SA DANIEL CAPONE, III

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 10-6-95)

305C-AL-46914

Continuation of FD-302 of    DAVID JON FALSO                                   , On  06/08/2005 , Page    2

FALSO initially became interested in child pornography when he received a solicitation, via the computer, to receive child pornography. FALSO responded "out of curiosity" and received child pornography via the internet. FALSO admitted that all of the child pornography he possessed had been obtained via the internet. FALSO believed he once belonged to a pay site where he obtained child pornography for a fee. FALSO believed he belonged to this pay site for an approximate one month period. FALSO was unable to recall the name of the site; however, FALSO recalled that he likely paid for his one month subscription to the child pornography pay site with his credit card.

FALSO admitted he is a member of adult pornography pay sites (via the internet) where he obtains adult pornography. FALSO stated he prefers to view "bi-racial" adult pornography.

FALSO admitted that he has current Yahoo and Road Runner accounts. FALSO acknowledged that his Yahoo screen name is "cousy1731" and his Road Runner screen name is "dfalso1". FALSO's nickname is "cousy" and many people know FALSO as "cousy". FALSO is a Boston Red Sox and Boston Celtics fan and he took the name "cousy" from former basketball player Bob Cousy. FALSO's Yahoo screen name is a combination of his nickname "cousy" and the addresses of his two bars (17 and 31 Central Avenue, Cortland, New York - "cousy1731").

FALSO denied that he shared child pornography with other persons and also denied that he ever transmitted child pornography via the internet. FALSO denied being a member of any Yahoo newsgroups; however, FALSO admitted that he once met an individual when traveling and the individual directed FALSO to what FALSO believed to be a Yahoo newsgroup that contained child pornography. FALSO never became a member of the newsgroup and could neither recall the name of the traveler nor the name of the newsgroup.

FALSO admitted that he was previously convicted of an offense regarding sexual contact with a child. FALSO stated he was dating a woman in the Cortland, New York area who had a seven year old daughter. FALSO returned home drunk one evening and the seven year old female jumped into FALSO's lap. FALSO stated that "one thing led to another" and there was no real physical contact "other than maybe a finger and it just happened". FALSO said he and his girlfriend separated as a result of the incident. FALSO admitted he received counseling for his attraction to young females pursuant to this incident; however, FALSO still finds himself attracted to

FD-302a (Rev. 10-6-95)

305C-AL-46914

Continuation of FD-302 of  DAVID JON FALSO                          , On 06/08/2005 , Page   3

    young girls.  FALSO admitted he is specifically attracted to
    teenage girls, ages 16, 17, and 18.  FALSO said he would never have
    sex with a very young girl; however, FALSO subsequently stated "I'm
    not saying if some young girl threw herself at me I wouldn't go for
    it, but I don't go looking for it".  FALSO further stated that
    while some men like "fat women" he likes "young girls".  FALSO was
    uncertain as to why he likes young girls and stated "I don't know
    if it's a sickness or what it is".

        FALSO admitted he knew possessing child pornography was
    illegal and stated "I've always worried about this moment because
    you see newspapers and it's a priest or educator".  FALSO was
    concerned that if the public knew he was a possessor of child
    pornography it could adversely effect his bar businesses.

        FALSO admitted he traveled extensively to foreign
    countries including Thailand, Cambodia, the Phillippines, Colombia,
    Brazil, Japan, and China.  FALSO's eldest son, ANTHONY FALSO, is
    married and resides in Hong Kong.  FALSO has traveled to Hong Kong
    to visit his son ANTHONY FALSO.  FALSO has obtained an "all Asia
    pass" when visiting ANTHONY FALSO and has visited other countries
    in Asia.  FALSO's youngest son, JOSEPH FALSO, is attending law
    school in the State of Ohio.  JOSEPH FALSO is completing his second
    year of law school (FALSO was unable to recall the name of the law
    school).

        FALSO admitted that one of the purposes for his travel to
    Thailand, Cambodia, and other countries, was to engage in sex with
    prostitutes and visit massage parlors.  FALSO admitted when he
    traveled to Thailand and other countries, he would seek to meet
    females who were 16 - 18 years of age for the purpose of engaging
    in sex.  FALSO admitted that while in Thailand and other countries,
    he met young girls and engaged in sexual activity.  FALSO also
    admitted that he photographed some of his sexual encounters with
    young women in Thailand and other countries.  FALSO was uncertain
    as to all of the young girls ages (with whom he engaged in sex),
    but stated he took these girls to hotels and the girls had to show
    identification at the desk of the hotel.  FALSO figured that if the
    girls were underage, the hotel would not permit the girl to
    accompany FALSO to his (FALSO's) hotel room.  FALSO estimated that
    he traveled internationally approximately ten times with the
    specific intent to meet young girls and engage in sex.  FALSO
    admitted that some of the girls with whom he engaged in sex (in
    foreign countries) were probably 16, 17, and 18 years of age.

FD-302a (Rev. 10-6-95)

305C-AL-46914

Continuation of FD-302 of _____DAVID JON FALSO_____, On _06/08/2005_, Page __4__

    FALSO admitted that while he initially became interested in child pornography after responding to a computer solicitation, he has since actively sought out child pornography on the internet. FALSO conducted computer internet searches in an attempt to locate child pornography.  FALSO entered search terms such as "lolita, kiddie porn, and child pornography" in an effort to identify, locate, and obtain child pornography via the internet.  FALSO stated he was unsuccessful and has only obtained child pornography when responding to specific computer generated solicitations via the internet.

    FALSO admitted that prior to the FBI arriving at his residence on 06/08/2005, he responded to a computer solicitation on his e-mail.  During the morning hours of 06/08/2005, FALSO read an e-mail which inquired if FALSO was interested in some free samples of child pornography.  FALSO sent a reply e-mail and indicated that he would like to receive the free samples of child pornography.

    FALSO admitted he saved child pornography (pictures and video clips) on his computer which was located in the living room of FALSO's residence.  FALSO stated a friend who was a United Parcel Service driver built the computer for FALSO.  FALSO came into possession of his current computer within the past two or three months.  FALSO is the only individual who has used this computer and FALSO transferred all of the child pornography he stored on prior computers to this new computer.

    FALSO also admitted that he possessed a digital camera; however, FALSO stated the digital camera was utilized at and for his businesses (Patino Murphy's and Bald Lucy's).

    FALSO was divorced from ex-wife Debra in approximately 1980.  Debra currently resides in Long Island, New York and sons ANTHONY FALSO and JOSEPH FALSO are the biological children of FALSO and Debra.  FALSO stated that he served in the United States Navy from 1959 - 1963.  FALSO was an enlisted sailor who served as a RADAR operator.

# GOVERNMENT EXHIBIT 3

9

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

V.

DAVID FALSO,

DEFENDANT.

INDICTMENT
3:05-CR-270
[TJM]

> U.S. DISTRICT COURT - N.D. OF N.Y.
> **FILED**
> JUN 16 2005
> AT_____ O'CLOCK____
> Lawrence K. Baerman, Clerk - Binghamton

## THE GRAND JURY CHARGES THAT:

### COUNT 1
### [TRAVEL WITH INTENT TO ENGAGE IN ILLICIT SEXUAL CONDUCT WITH MINORS]

Between in and about May of 2003 and continuing up until on or about June 8, 2005, in the Northern District of New York and elsewhere, **DAVID FALSO,** the defendant herein who is a United States citizen, did travel in foreign commerce for the purpose of engaging in illicit sexual conduct with female minors under eighteen (18) years of age.

All in violation of Title 18, United States Code, section 2423(b) & (f).

### COUNT 2
### [TRAVEL WITH INTENT TO ENGAGE IN ILLICIT SEXUAL CONDUCT WITH MINORS]

Between in and about July of 2000 and continuing up until in and about April of 2003, in the Northern District of New York and elsewhere, **DAVID FALSO,** the defendant herein who is a United States citizen, did travel in foreign commerce for the purpose of engaging in sexual acts

1

with female minors under eighteen (18) years of age.

All in violation of Title 18, United States Code, sections 2423(b) and 2246.

## COUNTS  3 - 10
## [PRODUCTION OF CHILD PORNOGRAPHY]

Between in or about July of 2000 and continuing up until on or about June 8, 2005, in the

Northern District of New York and elsewhere, **DAVID FALSO,** the defendant herein, did

knowingly and willfully employ, use, persuade, induce and entice a minor to engage in sexually

explicit conduct for the purpose of producing a visual depiction of such conduct, and defendant

knew and had reason to know that such visual depiction will be transported in interstate and

foreign commerce, and such visual depiction has actually been transported in interstate and

foreign commerce, in that, during said time period, the defendant caused the photographing of

minor females in sexually explicit conduct with a camera, and defendant then caused such

images to be transported in interstate and foreign commerce, and each such image is a separate

count of this Indictment:

| COUNT | IMAGE. |
|-------|--------|
| 3 | Production Image 1 |
| 4 | Production Image 2 |
| 5 | Production Image 3 |
| 6 | Production Image 4 |
| 7 | Production Image 5 |
| 8 | Production Image 6 |
| 9 | Production Image 7 |
| 10 | Production Image 8 |

All in violation of Title 18, United States Code, Section 2251(a).

2

Defendant committed the above offenses after he had a prior final conviction under the

laws of a state for offenses relating to the sexual exploitation of children and which conviction

affects the penalty provisions of Title 18, United States Code, section 2251.

## COUNTS 11 - 233
## [RECEIVING CHILD PORNOGRAPHY VIA THE INTERNET]

Between in or about July of 2000 and continuing up until on or about June 8, 2005, in the

Northern District of New York and elsewhere, **DAVID FALSO,** the defendant herein,

knowingly received child pornography and material containing child pornography that had been

mailed, transported and shipped in interstate and foreign commerce by any means, including a

computer, in that, defendant received via the internet the following listed computer images

knowing that the images contained a visual depiction and material containing a visual depiction

the production of which involved the use of minors engaged in sexually explicit conduct, as

defined in Title 18, U.S.C., section 2256, and each such image is a separate Count of this

Indictment:

| COUNT | IMAGE. |
|-------|--------|
| 11 | v0524.jpg |
| 12 | h0194.jpg |
| 13 | h0186.jpg |
| 14 | h0211.jpg |
| 15 | h0541.jpg |
| 16 | h0689.jpg |
| 17 | h0730.jpg |
| 18 | h0396.jpg |
| 19 | h0663.jpg |
| 20 | h0366.jpg |
| 21 | h0633.jpg |
| 22 | h0388.jpg |

3

| | |
|---|---|
| 23 | h0381.jpg |
| 24 | v0350.jpg |
| 25 | v0413.jpg |
| 26 | v0270.jpg |
| 27 | v0277.jpg |
| 28 | h0528.jpg |
| 29 | h0507.jpg |
| 30 | h0514.jpg |
| 31 | h0695.jpg |
| 32 | temp/derbinOn/page1of2 |
| 33 | temp/derbinOn/page2of2 |
| 34 | temp/derbinOn/next.htmlpage1of2 |
| 35 | h0096.jpg |
| 36 | h0107.jpg |
| 37 | h0394.jpg |
| 38 | h0246.jpg |
| 39 | fd/main/.jpg |
| 40 | h0658.jpg |
| 41 | h0242.jpg |
| 42 | h0508.jpg |
| 43 | h0231.jpg |
| 44 | h0492.jpg |
| 45 | h0098.jpg |
| 46 | h0209.jpg |
| 47 | xhotpix.com/page1of9 |
| 48 | saratoga.e-pid.org/prev.htmpage1of2 |
| 49 | saratoga.e-pid.org/prev.htmpage2of2 |
| 50 | h0706.jpg |
| 51 | h0707.jpg |
| 52 | h0718.jpg |
| 53 | h0710.jpg |
| 54 | h0716.jpg |
| 55 | h0605.jpg |
| 56 | h0645.jpg |
| 57 | v0655.jpg |
| 58 | h0463.jpg |
| 59 | h0467.jpg |
| 60 | h0483.jpg |
| 61 | h0254.jpg |
| 62 | h0269.jpg |
| 63 | h0293.jpg |
| 64 | lily.wamurl.com/pre3.html |
| 65 | 12fox.com/vf/indexs.htmlpage1of5 |

4

| | |
|---|---|
| 66 | 12fox.com/vf/indexs.htmlpage2of5 |
| 67 | 12fox.com/vf/indexg.htmlpage2of7 |
| 68 | 12fox.com/vf/indexg.htmlpage3of7 |
| 69 | 12fox.com/vf/indexg.htmlpage4of7 |
| 70 | 12fox.com/vf/indexg.htmlpage5of7 |
| 71 | fortarx.com/site/tour.htmlpage1of2 |
| 72 | AS_107.JPG |
| 73 | gonggi/ub0552413245224005562 |
| 74 | jk_003.jpg |
| 75 | cas-2-22.jpg |
| 76 | aa067.jpg |
| 77 | CA7MIQU2.jpg |
| 78 | 004.jpg |
| 79 | 10asfck1.jpg |
| 80 | 10assfck.jpg |
| 81 | hard0508/31.jpg |
| 82 | lcs18-14.jpg |
| 83 | image24.htm |
| 84 | aa015.JPG |
| 85 | AT_193.JPG |
| 86 | AT_407.JPG |
| 87 | AT_153.JPG |
| 88 | AT_195.JPG |
| 89 | 43-18.jpg |
| 90 | siris6.jpg |
| 91 | siris6c.jpg |
| 92 | siris5.jpg |
| 93 | B21.JPG |
| 94 | 11-n3f12.jpg |
| 95 | aal_h063.jpg |
| 96 | as_213.jpg |
| 97 | as_340.jpg |
| 98 | as_214.jpg |
| 99 | AT_278.JPG |
| 100 | VEN07.JPG |
| 101 | VEN10.JPG |
| 102 | VEN05.JPG |
| 103 | as033.jpg |
| 104 | koro12.jpg |
| 105 | 14.jpg |
| 106 | olya0091.jpg |
| 107 | olya0101.jpg |
| 108 | as_255.jpg |

| | |
|---|---|
| 109 | as_183.jpg |
| 110 | 43-06.jpg |
| 111 | AT_155.JPG |
| 112 | B29.JPG |
| 113 | lcs18-11.jpg |
| 114 | ADINA-23.JPG |
| 115 | LL-N4-17.JPG |
| 116 | LL-N4-21.JPG |
| 117 | LL-N4-18.JPG |
| 118 | ll-n4-24.jpg |
| 119 | TOTRP9.JPG |
| 120 | hel-lo46.jpg |
| 121 | !!!!!!ys.jpg |
| 122 | 06FUC.JPG |
| 123 | image2.html |
| 124 | B01.JPG |
| 125 | 0679.jpg |
| 126 | 0674.jpg |
| 127 | kp006701.jpg |
| 128 | kp006700.jpg |
| 129 | image1.htm |
| 130 | aa037.jpg |
| 131 | preteen/3.jpg |
| 132 | preteen/11.jpg |
| 133 | hl-51-027_jpg.htm |
| 134 | cindy08.jpg |
| 135 | fake_794.jpg |
| 136 | 43-04a.jpg |
| 137 | ll-43-02.jpg |
| 138 | 43_01b.jpg |
| 139 | ll-43-03.jpg |
| 140 | unknown-1798.jpg |
| 141 | hard0508/21.jpg |
| 142 | kp010801.jpg |
| 143 | preteen/1.jpg |
| 144 | h0234.jpg |
| 145 | 0663.jpg |
| 146 | AT_190.JPG |
| 147 | AT_148.JPG |
| 148 | AT_081.JPG |
| 149 | AT_039.JPG |
| 150 | AT_044.JPG |
| 151 | kp000719.jpg |

| | |
|---|---|
| 152 | LL-P1-27.JPG |
| 153 | ch5.jpg |
| 154 | 8796.jpg |
| 155 | 011v.jpg |
| 156 | Im000104.jpg |
| 157 | a699978.jpg |
| 158 | 10blow.jpg |
| 159 | behind2.jpg |
| 160 | ga-01.jpg |
| 161 | etnymph022001s |
| 162 | image18.htm |
| 163 | id=4&unixtime=... |
| 164 | etnymph110.JPG |
| 165 | sveta003.jpg |
| 166 | mclt0224.jpg |
| 167 | hel-lo13.jpg |
| 168 | h0425.jpg |
| 169 | phot0002.jpg |
| 170 | index2.html |
| 171 | aal_h057.jpg |
| 172 | AT_082.JPG |
| 173 | aa016.JPG |
| 174 | preview2.html |
| 175 | index2.html |
| 176 | 12.jpg |
| 177 | as_237.jpg |
| 178 | AT_156.JPG |
| 179 | 1133.jpg |
| 180 | LL-N4-16.JPG |
| 181 | AS_035.JPG |
| 182 | 08~mist067.jpg |
| 183 | cath23.jpg |
| 184 | 05B.JPG |
| 185 | aa008.jpg |
| 186 | 43-12.jpg |
| 187 | vb77.jpg |
| 188 | AT_150.JPG |
| 189 | preview3.html |
| 190 | ccpp7asd/index.html |
| 191 | image3.htm |
| 192 | image27.htm |
| 193 | AT_385.JPG |
| 194 | AT_085.JPG |

7

| | |
|---|---|
| 195 | a699980.jpg |
| 196 | 08~mist096.jpg |
| 197 | AT_175.JPG |
| 198 | AT_171.JPG |
| 199 | ll-el-08.jpg |
| 200 | AT_163.JPG |
| 201 | kp009011.jpg |
| 202 | hel-lo09.jpg |
| 203 | bangko03.jpg |
| 204 | athome01.jpg |
| 205 | B02.JPG |
| 206 | DCS00006.JPG |
| 207 | image3.html |
| 208 | as_308.jpg |
| 209 | hel-cum05.jpg |
| 210 | ADINA-25.JPG |
| 211 | cath11.jpg |
| 212 | kp000101.jpg |
| 213 | as_193.jpg |
| 214 | image1.html |
| 215 | image18.html |
| 216 | 43-22a.jpg |
| 217 | hel-cum04.jpg |
| 218 | lcs18-18.jpg |
| 219 | Tour.html |
| 220 | HEA_010.JPG |
| 221 | preteen/13.jpg |
| 222 | kp000102.jpg |
| 223 | Copy%20of%20xx9.jpg |
| 224 | HEA_017.JPG |
| 225 | gal-10.jpg |
| 226 | 014.JPG |
| 227 | _10ondad_.jpg |
| 228 | hel-lo09.jpg |
| 229 | 5yearsol_3.jpg |
| 230 | lcs18-05.jpg |
| 231 | siris2f.jpg |
| 232 | betty-13.jpg |
| 233 | NATASH19.JPG |

All in violation of Title 18, United States Code, Sections 2252A (a)(2)(A)&(B) and 2256.

Defendant committed the above offenses after he had a prior final conviction under the

8

laws of a state for offenses relating to sexual abuse and abusive sexual conduct involving a minor and which conviction affects the penalty provisions of Title 18, United States Code, section 2252A(b)(1).

## COUNTS 234 - 241
## [TRANSPORTING AND SHIPPING CHILD PORNOGRAPHY]

Between in or about July of 2000 and continuing up until on or about June 8, 2005, in the Northern District of New York and elsewhere, **DAVID FALSO,** the defendant herein, knowingly transported and shipped in interstate and foreign commerce by any means child pornography, in that, defendant transported and shipped in interstate and foreign commerce the following listed images/pictures knowing that the images/pictures contained a visual depiction and material containing a visual depiction the production of which involved the use of  minors engaged in sexually explicit conduct, as defined in Title 18, U.S.C., section 2256, and each such image/picture is a separate Count of this Indictment:

| COUNT | IMAGE. |
|-------|--------|
| 234 | Production Image 1 |
| 235 | Production Image 2 |
| 236 | Production Image 3 |
| 237 | Production Image 4 |
| 238 | Production Image 5 |
| 239 | Production Image 6 |
| 240 | Production Image 7 |
| 241 | Production Image 8 |

All in violation of Title 18, United States Code, Sections 2252A (a)(1) and 2256.

Defendant committed the above offenses after he had a prior final conviction under the

9

laws of a state for offenses relating to sexual abuse and abusive sexual conduct involving a minor and which conviction affects the penalty provisions of Title 18, United States Code, section 2252A(b)(1).

## COUNT 242
## [POSSESSION OF CHILD PORNOGRAPHY]

Between in or about July of 2000 and continuing up until on or about June 8, 2005, in the Northern District of New York and elsewhere, **DAVID FALSO,** the defendant herein, did knowingly and willfully possess material which contains images of child pornography that have been mailed, shipped and transported in interstate and foreign commerce by any means, and which were produced using materials which have been so mailed, shipped and transported in interstate and foreign commerce by any means, in that, defendant knowingly possessed computers, computer hard drives, CD/DVD disks, paper, photographs, negatives and other materials containing numerous graphic images of child pornography, knowing that the images contained a visual depiction and material containing a visual depiction, the production of which involved the use of minors engaged in sexually explicit conduct as defined in Title 18, U.S.C., section 2256.

All in violation of Title 18, United States Code, Section 2252A(a)(5)(B).

Defendant committed the above offense after he had a prior final conviction under the laws of a state for offenses relating to sexual abuse and abusive sexual conduct involving a minor and which conviction affects the penalty provisions of Title 18, United States Code, section 2252A(b)(2).

10

## FORFEITURE ALLEGATION RELATING TO COUNTS 1 - 242

Upon conviction of one or more of the offenses, alleged in Counts 1 through 242 of this Indictment, defendant **DAVID FALSO** shall forfeit to the United States pursuant to 18 U.S.C. § 2253, all visual depictions which were produced, transported, mailed, shipped or received in violation of the law; all property, real and personal, constituting or traceable to gross profits or other proceeds obtained from the offense(s); and all property, real and personal, used or intended to be used to commit or to promote the commission of the offense(s), including but not limited to the following:

1. **REAL PROPERTY**

   All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 20 Peaceful Drive, Cortland, New York, as more particularly described in a Deed dated October 15, 1984 and recorded in the Cortland County Clerk's Office in Book 401 at Page 212, as follows:

   ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, with buildings and improvements thereon erected, situate, lying and being in the City of Cortland, County of Cortland and State of New York, bounded and described as follows: Beginning at a point in the center of Peaceful Drive which is 214 feet measured S 07° 50' W. of the intersection of the center line of Peaceful Drive and the center line of Oaklin Drive; running thence N. 82° 10' W. a distance of 125 feet to a point marked by a set pin; running thence S. 07° 50' W. a distance of 62 feet to a point marked by a set pin; running thence S. 82° 10' E. and passing through an existing pin in the west curb line of Peaceful Drive a distance of 125 feet to a point on the centerline of Peaceful Drive; running thence N. 07° 50' E. along the center line of Peaceful Drive a distance of 62 feet to the place of beginning.

   That portion of the above described premises lying within the bounds of Peaceful Drive is conveyed subject to the rights of the public to use the same for street and highway purposes.

   The foregoing description is made according to a survey made by J. Frederick Brady, L.S. 19665 on September 30, 1975.

   This conveyance is made subject to all of the covenants, restrictions and provisions set forth in the deed of Walter C. Goff and Anna M. Goff to Donald L. and Yvonne G. Parker dated April 10, 1959.

   Being the same premises conveyed by Deborah Lee Falso to David J. Falso by Deed dated the 15th day of October, 1984 and recorded in the Cortland County Clerk's Office on the 16th day of October, 1984 in Book 401 of Deeds at page 212.

2. **PERSONAL PROPERTY**

   a.    A computer, no brand name, no serial numbers noted. Sticker on

back notes "QC Passed" with a line through 2003 and 4.  A silver mini tower, with trays labeled DVD-ROM and CD-Writer.  Computer also has a 3.5 disk drive. Silver on/off button. Computer face is silver with black trim.  There is a windows logo sticker on the upper right front of face that says "Designed for Microsoft Winodw XP";

b.      Four (4) DVD+Rs labeled #1, #2, #3 and #4 respectively;

c.      Video tape labeled "Mademoiselle Striptease";

d.      Tcon DVD labeled "Sideways".

If any of the above-described forfeitable property, as a result of any act or omission of the

defendant(s):

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 2253(o), to seek forfeiture of any

other property of said defendant(s) up to the value of the forfeitable property described above.

**A TRUE BILL**

Dated: June 16, 2005
      Binghamton, New York          **FOREPERSON OF THE GRAND JURY**

GLENN T. SUDDABY
UNITED STATES ATTORNEY

Dated: June 16, 2005

By:Miroslav Lovric
Assistant U.S. Attorney

12

# GOVERNMENT EXHIBIT 4

STATE OF NEW YORK, COUNTY OF Cortland

Local Criminal COURT Town OF Homer

THE PEOPLE OF THE STATE OF NEW YORK )
)
—vs.— )
) [ ] INFORMATION [X] COMPLAINT
DAVID JON FALSO    dob 03/14/41 )
_____ )
_____ )
Defendant(x) )

**ACCUSATION**

BE IT KNOWN THAT, by this [ ] Information [X] Complaint, Peter D. Hans ,
as the Complainant herein, [ ] stationed [x] residing at SP Cortland ,
accuses DAVID JON FALSO ,
the above mentioned Defendant(x), with having committed the [xxxxxxxxxxxxx] [ misdemeanor ] [xxxxx]
of Endangering the welfare of a child , in violation of Section 260.10 ,
Subdivision 1 of the Penal Law of the State of New York.

That during the year of 1986, believed to be in the month of January or February
xxxxxxxxxxxxxxxxxxxxxxxxx xxxxxxxxxxxxxxx in the
Town of Cortlandville , County of Cortland , the
Defendant(x) did [xxxxxxxxx] [ knowingly, ] [ xxxxxxxxxxxxxxxxxxxxxxxxxx] and unlawfully, _____

That a person is guilty of endangering the welfare of a child when he
knowingly acts in a manner likely to be injurious to the physical, mental or
moral welfare of a female child less that seventeen years old.

**FACTS**

TO WIT: That during the months of January or February 1986, the above
mentioned defendant did subject a female child less than seventeen
years of age to sexual contact, said sexual contact likely to be
injurious to the moral welfare of said child ██████████,
age 7, date of birth █████, ████, all contrary and in direct
violation to the above mentioned section of law.

The above allegations of fact are made by the Complainant herein xxxxxxxxxxxxxxxxxor upon information and
belief, with the sources of Complainant's information and the grounds for belief being the facts contained in the attached
SUPPORTING DEPOSITION(x) of ██████████████ .

[ xWHEREFOREx Rxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx. ]
—OR—
[ xWHEREASx xxxxxxxxxxx xxxxxxxxxxxxxxxxxxx xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxto appear before
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

**NOTICE**

In a written instrument, any person who knowingly makes a false statement which such person does not believe to be true
has committed a crime under the laws of the State of New York punishable as a Class A Misdemeanor. (PL § 210.45)

Affirmed under penalty of perjury
this 18th day of February , 19 87 .

—OR—

Investigator Peter D. Hans
COMPLAINANT

Subscribed and Sworn to before me
this _____ day of _____ , 19 ___ .

_____

[ ] = STRIKE OUT ANY WORDS THAT DO NOT APPLY     COPY 1     FEB 19 1987

February 18, 1987

State of New York
County of Cortland
City of Cortland

    The following statement is being taken from ████████████ ████████ age 7, date of birth ██████ █████. █████ is a second grade student at ██████ School. She lives with her mother ████ ████████████, age 28,date of birth ███████, ████ and her brother ████████████ age 5. They reside at ████, ████████, █████████, █████████ N.Y. ████████████ is presently employed at the ████████ ██████████, Cortland, N.Y.as a licensed practical nurse. This statement concers sexual contact between ██████ and DAVID FALSO.

    DAVID FALSO has been a boyfriend of ████████████ for approximately three years and is called "COUSEY" by his friends. Soemtime during the past year, COUSEY was at our house. I was in the livingroom, on the couch. COUSEY was tickling me and when he tickled me, he put his hand down my pants. He put his hand inside my underpants and rubbed my private parts. When he did this to me, it hurt a little bit. I do not remember if he put his finger inside of me. My brother ██████ saw COUSEY touch me and he ran an told my mother. My mother asked COUSEY about what had happened and he told her that he may have gone to far tickling me. Right after this happened, COUSEY left the house. As far as I can remember, he has only touched me once. I have been told in school about good and bad touches and where he touched me was bad.

    This statement has been taken in the presence of ██████'s mother ████████████ and will be read by both of them.It is true and correct to the best of her knowledge.

_Beverly Smith_
BEVERLY SMITH